OPINION OF THE COURT
Lee L. Holzman, J.
Decedent’s son, Walter Sakow, moves pursuant to CPLR 3211 (a) (5) and (7) to dismiss claims made against him in amended objections filed by decedent’s two daugthers to the account of their mother, the executrix, and for summary judgment pursuant to CPLR 3212 as to these claims. Although movant was not named as a fiduciary in decedent’s will, he is *673 charged by his sisters with misappropriating estate assets for his own benefit over a period of many years, either in collusion with his mother or by having controlled or deceived her. The motion is based on the alternative grounds that the claims are barred by the Statute of Limitations, that they fail to state a cause of action and that the undisputed facts establish that they lack merit. Although the parties have known for months that March 6, 1990 was fixed as the day certain for trial of this matter, this motion was made returnable on February 14, 1990.
Decedent died on January 30, 1956, survived by his widow, Rose Sakow, two daughters, aged 15 and 20, and a son who was then 25. Decedent’s assets consisted primarily of various parcels of real estate in The Bronx, largely unimproved, and stock in corporations which had similar real estate holdings. Decedent’s one-page handwritten will was admitted to probate on March 5, 1956. It bequeathed one third of the residuary estate to his spouse and the remaining two thirds to his three children, in equal shares. The shares of his two daughters were to be held in trust for them until they each attained the age of 23 years. It is conceded that no trusts were ever funded for the daughters. It is apparent that, throughout the history of this estate, Walter Sakow was clearly involved in the disposition of decedent’s real estate. The nature of his involvement and the extent of the assets are the ultimate questions to be determined at trial if the instant motion is denied.
Although the daughters have set forth seven counts in their amended objections, the allegations underlying all of their claims are that their brother, who was a law school graduate at the time of their father’s death, either in collusion with their mother or by controlling her, deceived them by telling them that their father had died intestate, leaving no assets of substantial value and that whatever assets decedent did have had been sold and used for their support and that of their mother. Movant denies that he ever deceived his sisters as to the existence of a will. However, as to the more important question of whether the decedent’s assets were sufficient to fund the daughters’ legacies, movant apparently still maintains that they were not. Objectants further contend that it was not until 1983 that one of them embarked upon an independent search and ascertained that decedent’s will had been admitted to probate. They further allege that their brother or entities or nominees controlled by him acquired many of the parcels of real property that had been owned by *674 the decendent or by corporations controlled by decedent in self-dealing transactions for less than full consideration. With regard to some of the properties, it is their position that movant, rather than the estate, received the proceeds. There appears to have been at least one occasion where movant held himself out to be a duly appointed agent of the estate. Objectants maintain that they have never received anything from the estate, that the decedent’s assets can now be traced to assets having a value in the millions of dollars and that they are together entitled to a four-ninths interest in all of these assets.
By petition dated June 20, 1984, objectants instituted an application to compel their mother to account. She opposed the application on the grounds of the Statute of Limitations and loches. After a hearing, the court held that the executrix had failed to establish an open and notorious repudiation of her duties as fiduciary which would have started the period of limitations running, and that, accordingly, objectants’ claims were not time barred (Estate of Sakow, NYLJ, May 10, 1985, at 15, col 2). An order for a compulsory account was entered on August 9, 1985 which gave the executrix five months in which to account. However, the accounting was not filed until April 11, 1986, due to delay engendered, inter alla, by a motion to reargue and an appeal taken from the order to account. The original objections were filed on July 1, 1986. On March 4, 1987, objectants obtained an order to show cause seeking, inter alla, leave to file amended objections. The amended objections had been verified on February 23, 1987. By order dated November 16, 1987, leave to file such objections was granted nunc pro tune to the time of the filing of the original objections.
Movant argues that all of the contentions of his sisters either sound in fraud or seek the imposition of a constructive trust, both of which are barred by the applicable Statutes of Limitations. Objectants counter that there are factual issues to be resolved at a trial before a determination can be made on the Statute of Limitations arguments and that the doctrine of equitable estoppel precludes barring their claims.
The most interesting question raised by this motion, and the one on which there is the least authority, is movant’s contention that the rule that the Statute of Limitations does not begin to run against an executor or trustee until there has been an open and notorious repudiation of his fiduciary re *675 sponsibilities can be applied only to a de jure fiduciary and not to a de facto fiduciary, a constructive fiduciary or any other type of fiduciary ex maleficio. For anyone other than a de jure fiduciary movant argues that the applicable Statute of Limitations is six years from the alleged wrongful act, regardless of the time of discovery (CPLR 213 [1]).
Although dicta can be found to support movant’s position (see, Lammer v Stoddard, 103 NY 672), it is much too broad a statement. Since a person can be classified as a fiduciary ex maleficio as a product of radically different sets of circumstances, it is appropriate for different rules to be applied depending upon the nature of the act or acts forming the gravamen of the claim. Specifically, there is a basis to apply a different rule depending upon whether there was one initial wrongful act, whether title was properly acquired but wrongfully retained or whether the alleged fiduciary continuously acted as or pretended to be the lawful fiduciary of the estate and only contended otherwise when called upon to account as lawful fiduciary. The following rules set forth the time that the Statute of Limitations begins to run: from the wrongful taking of title in the first instance, from the wrongful refusal to reconvey title in the second instance and in the third instance, not until there has been an open and notorious repudiation of his fiduciary obligations.
Movant relies on the 1886 Court of Appeals case of Lammer v Stoddard (supra) and its progeny (Scheuer v Scheuer, 308 NY 447; Motyl v Motyl, 35 AD2d 1051; Kitchner v Kitchner, 100 AD2d 954; Dybowski v Dybowska, 146 AD2d 604) for the proposition that, if the defendant is not a de jure fiduciary but instead is a trustee ex maleficio or by implication or construction of law, the statute begins to run from the time the wrong was committed. However, these cases are distinguishable from the instant case in that the defendants were not de facto fiduciaries. Specifically, in Lammer v Stoddard (supra), the fiduciary of an estate had allegedly loaned money to her son and taken back a second mortgage on real estate. The obligation was never repaid and the security was lost by foreclosure of the prior lien. Approximately 50 years after the default and after the borrower’s death, relief was sought against the son’s estate. It was clear that any lawsuit on the bond and mortgage would have been time barred so the action was brought to impose a constructive trust. That case did not involve claims that the son or his estate was acting as a de facto fiduciary for anyone. It was merely a case in which plaintiffs *676 were not allowed to use the constructive trust theory to avoid the limitation applicable to an action on a bond and mortgage.
Just as there is dicta from the Court of Appeals to support movant’s contentions relative to the Statute of Limitations, there is other dicta from the court which would support the position of objectants. Specifically, in Mills v Mills (115 NY 80), which was decided in 1889, three years after Lammer v Stoddard (supra), the court referred to a novel claim which was being made on behalf of the plaintiff in that case which was that the defendant could be held as executor de son tort of his brother’s estate and hence the Statute of Limitations must be applied as if he were rightfully and actually executor with his brother’s estate in his hands. The Court of Appeals indicated that it recognized the concept of an "executor de son tort” but that the facts of that case did not support its application. An "executor de son tort” is a person who assumes to act as executor of an estate without any lawful authority, but who, by his intermeddling, makes himself liable as an executor to a certain extent (Black’s Law Dictionary 403 [5th ed]). The definition of "trustee de son tort” is similar. In 1955, the Court of Appeals again stated that "[t]he power of the court to treat a wrongdoer as a trustee de son tort or trustee ex maleficio is beyond question” (Katzman v Aetna Life Ins. Co., 309 NY 197, 202).
In Estate of Lasser (NYLJ, June 4, 1986, at 13, col 3), Surrogate Lambert held that an individual who had assumed the role of executor of the estate could be compelled to account on exactly the same basis as a de jure fiduciary and that the Statute of Limitations did not begin to run against the de facto fiduciary until there was open and notorious repudiation of the executorial duties which he had assumed. This court also finds that a plea to be relieved of the accounting responsibilities and the Statute of Limitations applicable to a de jure fiduciary should not be entertained when it comes from the mouth of one who was willing to act as if he were the de jure fiduciary when he deemed it advantageous to himself.
The allegations of the objections, if proved, would make this an appropriate case for treating movant as a trustee de son tort or a de facto trustee. It is conceivable that objectants could establish that their older and more sophisticated brother deceived both them and their mother by transferring assets to himself which should have been divided among the members of the family, for less than full or no consideration, and that, *677 as a result of these transactions, he is today a very wealthy man. They might also be able to establish that their brother acted in almost every way as if he were the executor and trustee of this estate in that he assumed the management and control of the assets and sold the assets purportedly to provide the family with money on which to live. If the signature of his mother was required on any document, he was apparently able to obtain it without undue difficulty. On the other hand, it may be that movant can prove that his sisters were aware of his activities, if not from the inception of the estate, for a sufficient period of time to bar their claims under the Statute of Limitations.
Movant’s position becomes untenable and unconscionable when he argues that, even if he were the mastermind behind the fiduciary’s malfeasance and even if he has been the one to benefit chiefly from such wrongdoing, his sisters must look solely to their mother for relief even though she would not have the assets to satisfy whatever judgment they might obtain against her. Common sense and simple equity dictate that the law cannot be as movant suggests. It is inconceivable that equity could estop a de jure fiduciary from invoking the Statute of Limitations while failing to provide any remedy against a "de facto” executor or trustee who was not only in pari delicto with any wrongdoing done by the de jure fiduciary but allegedly much more to blame and the one who has ended up with the ill-gotten gains.
In Augustine v Szwed (77 AD2d 298), the court held that, if the constructive trust is of a nature that the constructive trustee was supposed to obtain the property in his own name and transfer it to a beneficial owner at a later date, the statute does not start to run until the constructive trustee refused to honor his obligation. Here, objectants contend that it was only after the account was filed and they could explore the allegations thereon that it became apparent that their brother was not acting on their behalf but instead was claiming estate property or the fruits thereof as his own.
Accordingly, the motion to dismiss the claims upon Statute of Limitations grounds is denied on the ground that objectants should have a chance to establish at the trial one or more of the following contentions: that movant acted as if he were the de jure fiduciary and he cannot be heard to complain if the same Statute of Limitations is applied to him as to a de jure fiduciary (Estate of Lasser, supra), that based upon movant’s representations to objectants and upon his having acted as if *678 he were administering the estate for their benefit, the Statute of Limitations did not begin to run until the account was filed and movant refused to turn over properties not listed in the account (see, Augustine v Szwed, supra); and that movant should be equitably estopped from asserting the Statute of Limitations as a defense because from the date of decedent’s death to the present he has used every device he could think of to hide the truth and, then, once legal proceedings had been commenced to ascertain the facts, he placed further impediments in the path of objectants’ quest to ascertain the truth about their legacies (see, Zuch v Zuch, 117 AD2d 397; Schirano v Paggioli, 99 AD2d 802).
[Portions of opinion omitted for purposes of publication.]