OPINION OF THE COURT
Lee L. Holzman, J.
In this accounting proceeding, decedent’s two daughters, Evelyn Breslaw and Diana Sakow, filed objections relating to events which date back to January 30, 1956, the date of decedent’s death. Their amended objections allege claims couched in terms of fraud, breach of fiduciary duty, and unjust enrichment. Objectants seek various remedies including the imposition of a constructive trust and $20,000,000 in punitive damages against the executrix, their mother Rose Sakow, and their brother, Walter Sakow, jointly and severally. Although Walter was not a nominated fiduciary under the will, objectants claim that it was he who assumed the administration of the estate and misappropriated its assets for his own benefit. A nonjury trial was held over a two-month period on the issue of liability with the question of damages bifurcated for a further hearing in the event that the objectants were successful in establishing liability.
The long and checkered history of this case began more *705 than 28 years after decedent’s death when objectants instituted a compulsory accounting proceeding against their mother by petition filed on July 3, 1984. The Appellate Division, First Department, affirmed separate orders directing the administratrix to account and permitting amended objections to be filed nunc pro tunc to July 1, 1986, the date of the filing of the original objections. Walter’s subsequent motion to dismiss the objections and for summary judgment was denied. The court held that there were factual issues to be resolved before a determination could be reached on whether all of the objectants’ claims were time barred under the applicable Statutes of Limitations and that the objections contained sufficient allegations, if they could be proved, to hold that Walter had committed a fraud, that a constructive trust should be imposed, or that Walter was the de facto fiduciary of the estate whose liability was the same as the de jure fiduciary (Matter of Sakow, 146 Misc 2d 672).
The gravamen of objectants’ claim is that they were deceived by their mother and brother into believing that the decedent had left no will and that the net worth of any property that he left was next to nothing. Because Walter was allegedly able to build a fortune starting with only decedent’s properties by borrowing against some parcels, selling or trading others, and developing or retaining a beneficial interest in still others, objectants contend that they are entitled to share in all of the assets that their brother has accumulated since 1956. They argue that Walter’s usurpation of estate assets makes this an appropriate case in which to hold Walter liable as a fiduciary in fact or de son tort and to treat him exactly as if he had been a fiduciary with, or instead of, their mother. Walter relies on the defenses that he asserted in his motion to dismiss and for summary judgment.
The documentary evidence adduced indicates that Rose Sakow signed all of the necessary documents to transfer all of the real property which had been in the name of decedent, individually. Although Walter appears to have been the moving force behind these transactions, there was no proof that he had ever held himself out to be the fiduciary of the estate. Moreover, Rose’s obvious interest in a dollar makes it questionable whether she signed all of these documents without any idea as to the nature of the transaction.
The transactions involving W.E.D. Holding Corp., however, pursued a different path. Notwithstanding that Walter claimed that decedent had made a gift of some of the shares *706 in this corporation to him, the credible evidence indicates that decedent was the sole shareholder. Walter’s contention of a gift is at least to some extent inconsistent with his contention that he had virtually no knowledge of or involvement with his father’s business dealings prior to his father’s death. In any event, Walter clearly did not meet his burden of proving that decedent had delivered a gift of any interest in this corporation to him (Matter of Lefft, 44 NY2d 915; Matter of Roberts v Jossen, 99 AD2d 1002; Matter of Abramowitz, 38 AD2d 387, affd 32 NY2d 654; Matter of Kaminsky, 17 AD2d 690, appeal dismissed 12 NY2d 840). Walter appears to have signed all of the necessary documents to transfer real property from W.E.D. either to himself, to his nominees, or to entities in which he had an interest. Aside from his own assertion that W.E.D. received full consideration for these transfers, no proof was adduced to support this contention. Moreover, no proof was presented to establish that Rose was aware of Walter’s machinations with regard to the real property owned by W.E.D. The following are two examples of transactions involving Walter and W.E.D.: (1) Premises 2801 Tiemann Avenue, Bronx (block 4787, lots 28, 39 and 40) was transferred by a deed signed by Walter to his apparent nominee, Sholom Nurbin, on July 13, 1956 and reconveyed to Walter by a deed dated November 4, 1968 and is still owned by him; and (2) Premises 2121 Matthews Avenue, Bronx (block 4322, lots 64 and 66) was transferred by a deed signed by Walter to an apparent nominee, Justin Jacobs, on June 4, 1956 and was thereafter transferred to JJ Realty and ultimately to Rose Gardens, the present owner of the premises, in which Walter has the controlling interest.
The concept of a de facto executor or trustee has long been recognized under New York law (Mills v Mills, 115 NY 80; Matter of King, 194 AD2d 726, affg NYLJ, Feb. 11, 1992, at 26, col 2; Matter of Behr, 191 AD2d 431; Matter of Sakow, 146 Misc 2d 672, supra; Matter of Dakin, 58 Misc 2d 736; Matter of Lewin, 41 Misc 2d 72, 75; Matter of Wohl, 36 NYS 2d 926; Matter of Lasser, NYLJ, June 4, 1986, at 13, col 3). An executor "de son tort” is defined in Black’s Law Dictionary 403 (5th ed) as a "person who assumes to act as executor of an estate without any lawful authority, but who, by his intermeddling, makes himself liable as an executor to a certain extent.” The Court of Appeals stated in Katzman v Aetna Life Ins. Co. (309 NY 197, 202) that "[t]he power of the court to treat a wrongdoer as a trustee de son tort or ex maleficio is *707 beyond question.” The result of finding that a person has assumed the mantle of a fiduciary under one of these theories has been broadly stated to be that the de facto fiduciary may be held liable to account and presumably surcharged for self-dealing on the same basis as any other fiduciary (Matter of King, supra; Matter of Sakow, supra; Matter of Lasser, supra). However, the criteria which must be met to bring a party within the purview of the de facto principle has not been clearly enunciated, probably because most of the decisions on the subject have been rendered in the context of motions for summary judgment or to dismiss, a stage in the proceeding when the party relying on the concept is given every conceivable opportunity to prove that a person has exerted effective control over assets of a trust or estate to an extent which renders him or her as responsible as a de jure fiduciary. If there is any doubt, the motion to dismiss must be denied (Matter of Behr, supra).
If merely being the principal decision maker with respect to the disposition of estate assets is sufficient to bring the decision maker within the scope of the definition, then objectants would prevail. Objectants did prove that many of the people who dealt with Walter after decedent’s death assumed that he had authority to speak on behalf of the estate, an assumption which was not far from the truth since the executrix admittedly left decisions to him, referred calls to him, and apparently signed the documents that he presented. However, the fact that a principal (the executrix) relies heavily upon an agent (Walter) does not place the same liability upon the agent as the principal unless the agent holds himself out as the principal or otherwise usurps the authority of the principal (3 NY Jur 2d, Agency and Independent Contractors, §§ 276-284). Something more than the fiduciary placing almost exclusive reliance upon another must be established to hold other persons liable as the fiduciary if they have never held themselves out to be the fiduciary.
The decision in Matter of Lasser (supra) is most useful because it sets forth exactly what activities the party had engaged in which, taken together, rendered him liable to account. In Lasser the alleged de facto executor was an erstwhile son-in-law of the decedent who took over the management of decedent’s business during the 25-year period that decedent’s widow was the de jure executrix. As a respondent in a compulsory accounting proceeding, the son-in-law denied that he had assumed the role of executor. However, he had *708 received the statements for an estate account and had written numerous checks on the account to pay alleged estate obligations. He had signed estate tax returns, one of which identified him as the executor; he had managed the corporate entity in which decedent or his estate had a controlling interest and another business half owned by the estate; and he admitted that he periodically reviewed the income and expenditures of the estate. Under these circumstances, the "manager” was held to be a de facto fiduciary and, in light of the fact that he could not point to any time more than six years earlier when he had repudiated his assumed role, he was held liable to account. It made good sense and therefore good law that the party who dealt with property and knew who was entitled to the beneficial interests was compelled to render an account, especially in view of the fact that the nominal fiduciary had died.
Although there is no question that Walter was a party to the transfer of estate-owned real estate to himself or entities in which he had an interest in the years immediately following decedent’s death and that he ultimately helped himself while he was helping his mother, the evidence did not show that Walter had acted as the fiduciary with regard to any real estate that was in decedent’s name individually. If Walter had been effectively passing himself off as the fiduciary of these assets, there would have been no need to have Rose sign every document on behalf of the estate and to have both objectants sign a correction deed from the estate to Jemm Realty in 1971. He did not have a power of attorney as did the de facto fiduciary in Matter of Behr (supra) and he never expressly promised objectants that he was holding anything for their benefit.
Accordingly, it is concluded that Walter’s actions fall short of those required to find that he was the de facto fiduciary of the real property that was in decedent’s name individually. Notwithstanding that Walter was the moving force behind many, if not most or all, of the transactions involving these assets, Rose was both the de jure and the de facto fiduciary of these assets. It is too much of a bootstrap operation first to hold Walter liable as a de facto fiduciary of the real property in his father’s name individually when he never held himself out to a third party as the owner of such property and then to hold that he must expressly repudiate a status which is, in essence, a legal fiction. The court is not willing to stretch the de facto principle to the extent necessary to circumvent the *709 Statute of Limitations imposed on fraud (or conversion) cases (CPLR 213) simply because it is confronted with the proverbial hard case.
With regard to W.E.D. Holding Corp., however, Walter clearly usurped the authority of his mother as the executrix of her husband’s estate to control the real property owned by this corporation. He assumed the mantle of being president and used this self-appointed position to transfer its real property to whomever he pleased, which was often himself. He alone signed all of the documents required to make these transfers and, aside from his own self-serving statements, he failed to establish that his mother was even aware of these transactions or that he paid fair, or even any, consideration for the assets of the corporation which were ultimately transferred to his name. As previously noted, these included 2801 Tiemann Avenue and his interest in Rose Gardens which was built on lots originally held both in decedent’s name individually and in the name of W.E.D. Walter signed the conveyance transferring the W.E.D. lots, and he, rather than his mother, ended up with the lion’s share of the interest in Rose Gardens. Although "W.E.D.” are the first letters of the names of each of decedent’s three children, Walter, Evelyn and Diana, it appears that Walter was the only beneficiary of its assets. There is no evidence that Walter, who was the sole officer of the corporation and was conveying its assets and managing its property, accounted to his mother or to anyone for his actions. As previously stated, Walter failed to establish that anyone other than decedent had an ownership interest in W.E.D.
Walter consistently maintained at the trial that every transaction involving W.E.D. was fair. Here, as in Matter of Lasser (supra), he is unable to point to any time period when he repudiated his assumed role of managing this substantial asset of the estate. Accordingly, it is in no way unfair or violative of the Statute of Limitations to now require him to account for his stewardship of W.E.D. Holding Corp. (Matter of King, supra; Matter of Lasser, supra). Moreover, in those instances where the fiduciary of an estate is able to gain control over a corporation as a result of the estate’s ownership interest in the corporation, the fiduciary is judged by the standards of a trustee rather than the "business judgment rule” which is usually applied to the conduct of a corporate officer and directors, and the beneficiaries of the estate may seek redress directly against the fiduciary rather than resorting to a shareholder’s derivative action (Matter of Schulman, *710 165 AD2d 499). If the conduct of these fiduciaries, whether de jure or de facto, is to be judged by the standards of a trustee, then the Statute of Limitations applicable to a trustee should also be applied to their acts in operating the corporation. Walter never disavowed that he was operating W.E.D. with the best interests of the estate in mind and he should now account for his actions in this regard. Of course, whether Walter can establish his contention that all of the transactions involving W.E.D. were fair and, even if he can establish this, whether it would prevent setting aside the transactions on the basis of his self-dealing without full disclosure to other parties (Diamond v Oreamuno, 24 NY2d 494; Leibert v Clapp, 13 NY2d 313), are issues which must await Walter’s account and any objections that might be filed thereto.
Although decedent had interests in corporations other than W.E.D. and Walter was involved in concluding transactions that had either been contemplated or started by decedent, it appears that, in those instances where the decedent had a beneficial interest in the corporation, Rose was aware of the transactions and approved of them. Thus, these corporations, unlike W.E.D., fall into the same category as the real property owned by decedent individually, to wit, that Walter cannot be deemed a de facto fiduciary of an asset merely because the true executrix relied heavily or even exclusively upon his advice with regard to the asset. Consequently, the objections insofar as they relate to Walter are dismissed except that he shall, within 90 days of the entry of the order to be settled herein, render an account for all of the actions of W.E.D. Holding Corp. since the date of decedent’s death.
[Portions of opinion omitted for purposes of publication.]