### NIVENS v. NIVENS.

(Circuit Court of Appeals, Eighth Circuit. October 12, 1904.)

No. 2,004.

1. ADMINISTRATOR—ACCOUNTING—BUSINESS CONDUCTED FOR ESTATE.

Where the owner of a possessory right in Indian lands of the Cherokee Nation operated a ferry thereon, which, although conducted under a periodical license, by the usages and customs of the nation was recognized as appurtenant to the land, its operation by his widow and administratrix after his death, although under licenses granted in her own name, must be regarded as having been for the benefit of the estate, and she is chargeable with the income therefrom.

2. SAME—ACCOUNTABILITY TO HEIRS.

Where the son of a decedent during his lifetime received from his mother, who was administratrix, far more than his share of the income from the estate, which was still undivided, the excess may be charged against income accruing after his death, in reduction of the amount which would otherwise be payable to his heirs.

3. SAME.

The widow of a decedent, who was left with small children, continued to conduct the farm and business of her husband, and, after paying his debts, raised and educated her children, and during the lifetime of a son, who was dissolute, gave him money largely in excess of the amount to which he was legally or equitably entitled from the estate, which had not been divided. *Held*, that his widow, who was his only heir, was not entitled to require his mother, as administratrix of the estate, to account to her for his proportionate share of the income received after his death.

Appeal from the United States Court of Appeals in the Indian Territory.

For opinion below, see 64 S. W. 604, 76 S. W. 114.

This suit was brought in the United States Court in the Indian Territory, Northern District, by Bettie Nivens against Julia Nivens, for the partition of a tract of land lying in the valley of the Arkansas river, and within the boundaries of the Cherokee Nation, and for an accounting of the rents and profits thereof and of a ferry property which was claimed to be appurtenant to the realty. The title to the land—about 150 acres—rested in the Cherokee Nation, a possessory right therein being held by one Moses Nivens at the time

of his death in 1871. Moses Nivens was a citizen by blood of the Cherokee Nation, and it is through him that the contending parties claim. When he died he left surviving him Julia Nivens, his widow, and two children, Emma and Jeff. A third child, Moses, was born after the death of his father, and died in 1876 at the age of five years. Jeff Nivens married the complainant, Bettie, and died in 1897 at the age of 28 years. Julia Nivens obtained letters of administration upon the estate of her deceased husband, but she never made a final settlement. She did settle, however, with her daughter, Emma, for the share of the latter, but it is a fair inference from the facts appearing in the record that the means came from the property of the estate. After the death of her husband, Julia Nivens procured the ferry licenses, and operated the business in her own name. While ferry rights were dependent upon the procurement of periodical licenses from the nation, they were generally considered as appurtenant to the adjacent realty. The administratrix listed the ferry in the inventory of the estate of her deceased husband. Bettie Nivens is the sole heir of Jeff, and it is his share in his father's estate which she claimed. In her complaint she alleged that she was entitled to recover from the defendant, Julia, one-third of the estate, including the rents and profits thereof and of the operation of the ferry. The master to whom the cause was referred found that Jeff Nivens had received from his mother his proper share of the profits of the estate accruing during his lifetime, but that complainant, as his heir, was entitled to recover the sum of $1,000, that amount being one-half of the profits accruing after his death. The report of the master was confirmed by the trial court, and a decree was rendered against the defendant for the amount so found to be due, and for a like proportion of the profits thereafter arising and a partition of the property. This decree was affirmed by the United States Court of Appeals in the Indian Territory, and Julia Nivens, the defeated party, has brought the cause by appeal to this court.

Thomas Owen (De Roos Bailey, on the brief), for appellant.

Preston C. West, for appellee.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It was admitted at the argument that since the decree in the trial court the land in controversy had been allotted in severalty by the Dawes Commission, and that by such allotment the appellant, Julia Nivens, received 50 acres thereof, and the appellee, Bettie, a like quantity. This disposes of the controversy as to the land, and leaves nothing for consideration but the rents and profits thereof and of the appurtenant ferry. The ferry right depended upon periodical licenses, but under the usages and customs of the Cherokee Nation, in which it was exercised, and from whose governing authorities the licenses were procured, the preference was accorded to the owner of the adjacent realty. The possessory right of Moses Nivens to the lands adjacent to the ferry was recognized for many years prior to his death as being sufficient to call for the exercise of the preference, and he enjoyed for a long period the continuous and uninterrupted privilege of operating the ferry and collecting tolls therefrom. Upon his death the appellant, his widow, procured letters of administration upon his estate and continued the conduct of the business. It is true that she procured the licenses and operated the ferry in her own name, but under the circumstances recited she should, in respect of the rights so acquired and exercised, be held as a trustee for those beneficially interested as heirs in the estate

until there was a satisfaction or a severance of their interests. There-
fore, in arriving at a conclusion in this cause, we have proceeded upon
the theory that the appellant was properly debited with the profits of the
ferry business until the allotment by the Dawes Commission.

Various questions were presented in the briefs and at the hearing con-
cerning the respective interests of the contending parties in the property
in controversy. Was the share of the widow, Julia, in the estate of
Moses Nivens, measured by that of one of his children, or was she
originally entitled to a third by way of dower? Who inherited the
share of the deceased child, Moses? What law concerning descents
and distributions governed? It is sufficient to say that giving to the
son Jeff, through whom the appellee claims, that interest in the estate
of his father which would result from an answer to these questions most
favorable to him, we are nevertheless clearly convinced that it was more
than exhausted prior to his death, and that even with the subsequent
earnings of the estate there was nothing left for the appellee. We
cannot adopt the suggestion which was made that an overpayment by
his mother during his lifetime could not be used against the appellee in
respect of profits accruing after his death in the absence of proof that
it was intended as an advancement. These are the prominent facts
which appear from the record before us: Upon the death of Moses.
Nivens, in 1871, appellant was left with two small children—Emma,
then about two years of age, and Jeff, about fourteen months. The
third child, Moses, was born about eight months afterwards. The value
of the estate, exclusive of the farm and the ferry, was shown in the
inventory to have been less than $3,000, and some of it was sold for
much less than its appraised value. Other items would naturally be
worn out or exhausted in the rearing of a family. Shortly after her
husband's death the appellant paid his debts, aggregating $2,000. She
raised two of her children—Emma and Jeff—to maturity, and gave to
each of them an education. The latter was sent to a school at Tahle-
quah, to the Indian University at Bacone, and to the State Agricultural
College at Manhattan, Kan. He dressed well, was dissolute and ex-
travagant. His mother kept him constantly supplied with money,
giving him in cash, as shown by the evidence, sums ranging from $5
to $500. Moreover, she indorsed his notes in bank and paid them.
She paid his debts, including doctors' bills, and sent him to Hot Springs,
Ark. Shortly after his marriage he came with his wife to live with
appellant. They lived with her over four years, until his death, and his
widow, the appellee, remained there about nine months thereafter.
No witness testified that he was ever seen to do any physical labor of
consequence about the home place. There was undisputed testimony
that he was a spendthrift, and was addicted to drunken sprees. In the
last eight years of his life appellant gave him as much as $4,000, and
finally she paid his funeral expenses. She produced before the master
his note, which he had executed for some cattle to a third party, who
gave it to her. After allowing liberally for an indefinite indorsement
of a payment, there remained unpaid thereon at the time of the trial
about $2,000. The dwelling house on the farm was destroyed by fire
shortly after the death of Moses Nivens. The appellant built another.
She doubled the area of cultivated land, and set out a little peach or-

chard. She personally managed the farm, and part of the time the ferry. After more than 30 years of industry, practically all she has left is the 50 acres of land, with improvements, which were allotted to her from the farm. An attentive and careful consideration of the record has led us to the unavoidable conclusion that the son Jeff had received more than he was ever legally or equitably entitled to from the estate of his father as augmented by the labor and enterprise of his mother, and that nothing remained due to the appellee as his heir.

The decrees of the United States Court of Appeals in the Indian Territory and the United States Court in the Northern District thereof are reversed, with directions to enter a decree dismissing the complaint upon the merits.