## HALEY *v.* ATLANTIC NATIONAL FIRE INSURANCE COMPANY *et al.*

It is the duty of an executor of an estate not to accept any position or to enter into any relation or to do any act inconsistent with the interest of the estate. Applying this principle, the decree complained of was demanded by the evidence.

No. 2092. FEBRUARY 18, 1921.

Equitable petition. Before Judge Mathews. Bibb superior court. May 10, 1920.

Mrs. Mamie H. Haley, as executrix of the estate of Herbert F. Haley, filed an equitable petition in which she alleged, that the funds of the estate in her hands amounted to $19,927.45; that the claims against the estate held by numerous creditors were largely in excess of the assets in her hands; that the claimants were asserting various priorities; and that she was unable to determine who were the creditors entitled to receive the funds in her hands. She prayed that the creditors named in the petition be required to prove their several claims and set up their respective priorities; that the assets of the estate be marshaled; and that she be given direction. In the schedule of creditors attached to the petition the plaintiff named herself, as an individual, as a creditor of the estate. Thereafter she filed an intervention, as an individual, asserting a claim for $12,382.52 against the estate, alleged to have been paid by her to Isaac Block out of her individual funds, in satisfaction of the balance due on three large judgments in favor of Block and against Herbert F. Haley. The case was referred to an auditor for a report on all issues of both law and fact. One of the creditors of Herbert H. Haley's estate, the Atlantic National Fire Insurance Company, hereinafter called the company, resisted Mrs. Haley's claim, but the auditor's findings of law and of fact were favorable to Mrs. Haley. To the report of the auditor the company filed its exceptions both of law and of fact; and the exceptions were approved by the judge. Upon the trial of the exceptions of fact the court directed a verdict sustaining each of the exceptions, and rendered a decree sustaining the exceptions of law. Mrs. Haley excepted.

*Pope F. Brock,* for plaintiff in error.

*Ryals & Anderson, T. S. Felder, Miller & Jones, R. C. Jordan, C. H. Garrett,* and *Ellis & Glawson,* contra.

GEORGE, J. (After stating the foregoing facts.) Herbert F. Haley, during his lifetime, borrowed $10,000 on his home place on Mulberry street in the City of Macon, $22,500 on the Findlay foundry property, and $25,000 on the Lawton-Jordan property, all from Isaac Block. The loan on the Lawton-Jordan property was subsequently reduced to $20,000. Haley failed to pay these loans, and Block instituted proceedings to foreclose them. Haley interposed

various objections to the foreclosure proceedings, but Block finally obtained judgments. Further litigation ensued; and when Block advertised the properties for sale Haley interposed affidavits of illegality. Under agreement, one of the affidavits of illegality was withdrawn; and the Mulberry street place, or home place, was sold in May, 1917, and Block became the purchaser of this property. Block entered into an agreement with the Rutherford Investment Company, a corporation, in which Haley was interested and of which he was president, by the terms of which the investment company was to be permitted to redeem the Mulberry street property upon conditons stated. The consideration of this agreement, or a part thereof, was a transfer of certain city lots, parts of the Rutherford place, to Block. At the same time a rent contract was made by Block with Haley, by the terms of which Haley agreed to pay certain rent for the Mulberry street property. One thousand dollars was paid to Block on August 1, 1917, and was credited on the fi. fa.; but other conditions of the agreement were not carried out. In October, 1917, Block made a new agreement with the Rutherford Investment Company, Herbert F. Haley Inc., and Herbert F. Haley individually. In substance the agreement recited the terms of the previous agreement and the desire that further time be given on some of the conditions therein named; that judgments had been obtained in favor of Block against Haley on the Findlay foundry loan and the Lawton-Jordan loan, and that affidavits of illegality had been filed to said judgments; that in consideration of the withdrawal of the affidavits of illegality Block agreed to give further time to redeem the Mulberry street property and also agreed not to sell the Findlay foundry and Lawton-Jordan properties until the first Tuesday in January, 1918; and that in the event certain payments were made before that time, further indulgence should be granted to Haley. The terms of this agreement were not carried out, and on the first Tuesday in January, 1918, the Findlay foundry property and the Lawton-Jordan properties were sold by the sheriff and were purchased by Block for $5,000 each. On the date of the sale Block entered into another agreement with Haley and the two corporations named, which agreement referred to the previous agreements, and recited that Haley had failed to comply with the terms thereof, and that in consequence the Findlay foundry and Lawton-Jordan properties had been sold, but gave to Haley the

privilege of redeeming these properties upon named conditions to be performed within twenty days thereafter. At the expiration of the twenty days the agreement was extended ten days. On the tenth day after the extension Block's attorney communicated with Haley and reminded him that his time was about to expire and that he would be given until midnight to comply with the conditions named in the agreement. Haley promised to comply, but failed to do so. He died the next day. Mrs. Haley qualified as executrix of her husband's will, and her representatives thereafter advised Block's attorney that they had found the agreements hereinbefore referred to among the papers of Haley, and in effect asked that Mrs. Haley be substituted for Mr. Haley in the agreements. Block's attorney and Mrs. Haley's representatives entered into negotiations to that end. In the meantime Block, through his attorney, sold the Mulberry street property at a larger sum than Mrs. Haley was willing to pay for it; and it was agreed that this excess should be credited on the two remaining fi. fas., Mrs. Haley having theretofore advised Block that she would pay the indebtedness due him and take over the properties. At this point there is some conflict in the evidence. Mrs. Haley contended that an agreed sum was to be paid and was paid as the purchase-price of the Findlay foundry and the Lawton-Jordan and Rutherford properties, and a separate sum for the judgments against Haley. It is not disputed that Block (the negotiations on his part having been conducted entirely by his attorney) insisted upon the payment of the full balance due upon the judgments after the amount realized from the sale of the Mulberry street property had been credited thereon. In making the calculation it is also undisputed that payments made by Haley during his lifetime on account of his indebtedness, and the rents paid by him for the dwelling-house under the first agreement mentioned above, were credited on the remaining fi. fas. It also appears that nothing was charged by way of purchase-price except the principal, interest, attorney's fees and cost, taxes and insurance paid by Block on account of said properties, and certain incidental expenses incurred by him in protecting or defending his claims upon said properties. The amount finally agreed upon was $48,382.50. Block refused to convey the real estate for any sum which would leave an unpaid balance on the fi. fas.; that is to say, Block insisted upon the payment of the full balance due on the fi. fas., plus certain additional

items above mentioned, as a condition precedent to a transfer of the
properties or the fi. fas. Mrs. Haley insisted, however, that she
was unwilling to pay more than $36,000 for the land, and that she
in fact paid $36,000 for the Findlay foundry property, the Lawton-
Jordan property, and the Rutherford lots; and that the balance, to
wit, $12,383.52, was paid for the transfer of the judgments. It is,
however, not disputed that the balance of $12,383.52 was to be paid
for these judgments, because such amount represented the unpaid
balance on the judgments after crediting the judgments with the
purchase-price of the real estate. Two separate checks were given by
Mrs. Haley to Block, one for $36,000 and one for $12,383.52. The
checks were accepted and the deeds to the property from Block to
Mrs. Haley were executed and delivered, and the fi. fas. transferred
to her. Mrs. Haley contends that Herbert F. Haley, at the time of
his death, had no right whatever, by option to purchase or other-
wise, in the real estate conveyed to her by Block. On the other
hand, the company (the defendant in error) contends that it was
not necessary for the estate of Herbert F. Haley to have an enforce-
able interest in the properties in order to prevent Mrs. Haley from
purchasing them at less than the judgment debts, under the admit-
ted facts. This is the controlling question; and in the view we take
of the matter it is unnecessary to rule upon the questions of plead-
ing and practice presented by the record.

The evidence establishes without dispute that Block was willing
to surrender the real estate and the judgments upon the payment of
the judgment debts, including certain items mentioned above, even
though he had purchased the properties at foreclosure sale, and even
though the right of Haley or the corporation to redeem the property
or any part of it had expired. It is likewise undisputed that Block
refused to make a conveyance of the properties, or any of them, un-
less and until he received the full amount due upon the judgments.
It appears that it was immaterial to him whether a portion of the
money due him should be considered as the purchase-price of the real
estate and a portion as the purchase price of the fi. fas. It is admit-
ted, however, that the amount to be paid for the land, accepting Mrs.
Haley's contention as true, was to be credited upon the fi. fas., and
that the balance then remaining was to be paid to Block, and that in
consideration of the full payment of the balance upon the judgments

both the real estate and the judgments were to be transferred. Although no legal obligation rested upon Mrs. Haley, as executrix, to redeem the property for the benefit of the estate, and although the estate had no right to redeem which it could enforce in law or in equity, in effect Block agreed to the redemption of the property by the payment of the amount due him on the judgments. He carried out the agreement. Mrs. Haley must be presumed to have known that the estate had a sum of money in hand or which would come into her hands as executrix. Accepting Mrs. Haley's version of the transaction as true, when she became the purchaser of the real estate from Block she put herself as an individual in a position that was in conflict with the proper discharge of her duties as executrix. Upon the terms and conditions named by Block the executrix of Haley's estate, as an individual, was not at liberty to purchase the property and claim the right to be reimbursed out of the funds of the estate for the money paid for the judgments. It is obvious that it was to her interest as an individual to buy the real estate for as low a price as possible. If she had been willing to pay $48,383.50 for the real estate, the judgments would have been fully paid under Block's agreement. It is manifest, therefore, that under the terms and conditions named by Block the interest of the estate demanded that the value of the lands be placed as high as possible, while Mrs. Haley's interest demanded that she buy the land for as small a price as possible in order that she might have the largest possible claim against the estate for reimbursement as transferee of the fi. fas. We do not assert that Mrs. Haley acted in bad faith. Under the authorities, the question of good faith, in such circumstances, is immaterial. It may be that the purchase by Mrs. Haley was in fact advantageous to the estate. This argument has been often advanced, and as often rejected. The broad rule of equity, applicable alike to agents, partners, guardians, executors, administrators, and directors' and managing officers of corporations, is that it is the duty of a trustee not to accept any position or to enter into any relation or to do any act inconsistent with the interest of the beneficiary. 2 Pomeroy's Equity, 655, § 1077; see *Fleming* v. *Foran,* 12 *Ga.* 594; Michoud v. Girod, 4 How. 503 (11 L. ed. 1076) ; Nivens v. Nivens, 133 Fed. 39 (66 C. C. A. 145) ; Grumley v. Webb, 44 Mo. 444 (100 Am. D. 306) ; Davis v. Hamlin, 108 Ill. 39 (48 Am. R. 541) ; Trice v. Com-

stock, 121 Fed. 620 (57 C. C. A. 646, 61 L. R. A. 176) ; Fulton v. Whitney, 66 N. Y. 548. We think the general principle is applicable and controlling here. Although the estate represented by Mrs. Haley had no enforceable right under the contract with Block, she could not as an individual accept the offer of Block and appropriate the bene- fits of his offer to her own use, to the possible injury of the estate. The controlling fact is that the agreement was made by Block, and that he did actually carry out the agreement in all substantial par- ticulars. Whether the estate represented by Mrs. Haley was in posi- tion to accept the offer of Block is likewise immaterial.

Mrs. Haley can not claim the balance due upon the fi. fas., al- though such balance was actually paid by her out of her own funds, so long as she withholds from the estate the advantage obtained by her in the transaction by which the outstanding claim was acquired. If she had offered to surrender to the court, to be administered for the benefit of the estate, the land that she acquired in the transac- tion, her right to be reimbursed by the estate for her expenditures in acquiring said land and judgments could not have been ques- tioned.

It follows from what we have said that the decree rendered by the court was right, irrespective of the correctness of the court's rulings upon the questions of pleading and practice presented by the record.          *Judgment affirmed.  All the Justices concur.*