A03A0212. BLOODWORTH et al. v. BLOODWORTH et al.
(579 SE2d 858)

BLACKBURN, Presiding Judge.

James R. "Jerome" Bloodworth and Claud Hughes sued their siblings, Henry Bloodworth and Eva Roy Bloodworth Etheredge, in their capacity as the co-executors of their mother's estate for breach of fiduciary duty and constructive fraud in the sale of certain farm property to their brother, Stewart Bloodworth, at a price "grossly below the market value." Appellants sought rescission of the sale, or in the alternative, for damages. After a hearing, the trial court granted the defendants' motion for summary judgment.[1] For the reasons set forth below, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view

[2] *GAC, MFG/Processing v. Busbin*, 233 Ga. App. 406 (504 SE2d 270) (1998).
[1] Finding its equity jurisdiction was not invoked, our Supreme Court transferred this case to this Court.

the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*[2]

Viewed in the light most favorable to the nonmovants, the evidence shows that the decedent, Gertie Bloodworth, was survived by eight children.[3] Her will designated her oldest son and daughter, Henry and Eva Roy, as co-executors of her estate. Letters testamentary were issued on May 14, 2001. On May 23, Henry told Jerome that he could submit a bid for the family farm but that his bid had to be postmarked by May 26. Jerome testified that Henry told him that on June 2, a family meeting would occur to discuss the sale of the farm and open the bids. Jerome prepared a bid and sent it by certified mail to Henry. Jerome, the owner of property on both sides of the property, testified that he submitted a sealed bid of $429,001.99.

Prior to the June 2 meeting, the co-executors obtained an independent appraisal of the property by Robert Goodroe, a certified appraiser. In a professional appraisal dated May 28, 2001, Goodroe estimated the market value of the realty as $525,500 as of March 17, 2001. About two weeks earlier, on May 11, 2001, George Peake, on behalf of Tolleson Land & Timber, submitted an offer to the estate to purchase the entire tract for $335,057.40, with that offer to remain valid through June 11, 2001.[4]

As co-executors, Henry and Eva Roy conducted the family meeting on June 2. Henry knew, even before the meeting, that Jerome wanted to buy the farm. Jerome testified that Henry and Eva Roy indicated that they were not obligated to consider his bid and told him "we can do whatever we want to." Claud confirmed that at the meeting, Henry and Eva Roy "stated they could do whatever they wanted to do." Claud testified that both she and Jerome reminded Henry and Eva Roy that they had fiduciary responsibilities to the heirs. However, at the June 2 meeting, Henry handed Jerome back his bid, unopened. Frustrated at the impasse, Jerome left, and so too did Claud and another sister, Glynis Ellis, whereupon the meeting broke up.

On June 13, 2001, Jerome and Claud retained legal counsel. At Jerome's request, on June 13, their attorney, Robert R. Gunn II, contacted counsel for the estate. Gunn testified that he advised of the representation and asked "that no action be taken with respect to the

---

[2] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[3] Eva Roy Etheredge, Charlie Estelle Goosby, Essie Claud Hughes, Henry Nuel Bloodworth, Bobbe Dean Richardson, Glynis Ellis, Stewart Bloodworth, and Jerome Bloodworth.

[4] Tolleson, a timber company, offered $1,710 per acre for the 195.94-acre tract. The property included eight ponds, a house, a farm building, eighty-five acres of open land, and ninety-three acres of woodland.

sale of the family farm until at least Tuesday of the following week since I was going to be out of town at a State Bar function." Gunn testified that on June 13, he faxed the following letter to the estate's lawyer, Lawrence C. Walker, Jr.

> Confirming our telephone conversation earlier today, it is my understanding that you know of no plans by the Executors of Mrs. Bloodworth's estate to transfer any of the property within the next few days and would not assist them in making such a transfer until you and I have conferred again by this coming Tuesday [June 19]. This firm will be representing Jerome Bloodworth concerning this matter, and it is Mr. Bloodworth's concern that the Executors may transfer the property to one of the other children of Mrs. Bloodworth for less than its full value in order to thwart our client's desire to acquire the property for a reasonable price.

Gunn advised that Jerome "stands ready, willing and able to participate in whatever process the Executors choose to sell the property." Gunn also asked for a meeting with the executors to discuss the sale of the property. He also warned that a transfer for less than its fair market value "may be a violation of the Executors' fiduciary duties."

Henry and Eva Roy told Stewart that Walker had notified them by letter that "Jerome was employing an attorney and that [Walker] had promised the attorney that he would do no legal work on the Gertie Bloodworth estate until the following Tuesday." Claiming that Jerome's "lawyer would throw a lis pendens" on the farm, Stewart suggested, "[y]ou all need to think what you can do." Then, notwithstanding the agreement between Gunn and Walker, Henry and Eva Roy proceeded to sell the farm to Stewart for $315,000 on Monday, June 18, using a different lawyer to handle the closing. Glynis testified that she did not think the executors acted properly and described their behavior as "sneaky." The day after the transaction, without disclosing the identity of the buyer, Henry wrote a note to Jerome, saying in part, "[w]e have sold the farm. . . . I am sorry you saw fit to withdraw your bid, that left us with (2) two bids." Henry added, "It was sold at a very fair market price for all of us." In a similar letter directed to their sisters, Eva Roy attempted to justify the sale without revealing the identity of the purchaser.

Glynis testified that prior to June 2, Stewart had told her, "if I . . . tell Eva Roy and Henry that I want the farm, I'll get it." Stewart also told Glynis that he could not pay what the property was worth. Glynis testified that after their mother's death, Stewart asked her "if the family members were willing for a family member to get it at a reduced price." Glynis testified that at the June 2 meeting, when she

suggested that Bobbe Dean Richardson, who is another sibling, and Claud be allowed to bid, Stewart said they could not bid because they had already heard the appraisal.[5] Glynis testified that their mother had repeatedly expressed her desire that all eight children share in her estate equally. Glynis recalled her mother saying, "[i]f I only have one penny left, I want that one penny split in eight ways."

A month after the sale of the property, the Board of Tax Assessors of Houston County appraised this property at $476,300 for 2001 tax purposes, an amount which Jerome testified did not include timber worth approximately $50,000. Acting on behalf of the estate, on August 2, 2001, Eva Roy appealed the ad valorem tax appraisal. Afterward, the property was revalued for tax purposes at $414,150.

Unaware of the sale a day earlier, Gunn telephoned Walker on June 19 to request "a meeting be scheduled with the Executors . . . as well as the other heirs, for the purpose of clearing the air." Gunn advised: "Jerome Bloodworth would like an opportunity to bid on the farm," and he cautioned that "[i]f the property is transferred for less than its fair market value, this would expose the Executors to a claim that they violated their fiduciary duties."

After learning about the sale, Jerome and Claud filed the underlying lawsuit in which they asserted they were denied the opportunity to submit bids for the farm. They alleged that Henry and Eva Roy "treated the subject as their own and conducted the sale of the property with little, if any, regard to their duties and obligations to the Estate of Ms. Bloodworth or the Plaintiffs and other beneficiaries." They accused Henry, Eva Roy, and Stewart of conspiracy and defrauding them

> by agreeing to sell the property to Stewart Bloodworth for an amount grossly below the market value, by agreeing to unreasonably limit the number of bids solicited, by failing to follow any reasonable bidding process, by failing to consider the bid of Jerome Bloodworth, by failing to allow Claud Hughes to make a bid and in and by other means as will be shown at the trial of this case.

During the motion hearing on summary judgment, although readily acknowledging the fiduciary duty owed to their siblings, Henry and Eva Roy claimed they "exercised their duty diligently and cautiously" and "went beyond the call of duty." They pointed out that

---

[5] It was Stewart who recommended Goodroe as the independent appraiser. Only Henry, Eva Roy, and Stewart knew the value placed by Goodroe in his appraisal before the family meeting on June 2. Stewart also admitted that he knew the amount of the Tolleson offer before that meeting.

they had not been under any requirement to hold the June 2 meeting. Henry and Eva Roy asserted that they had honored their fiduciary duty to the other beneficiaries. The trial court apparently agreed and awarded judgment to Henry, Eva Roy, and Stewart.

1. Jerome and Claud contend that a jury should decide whether Henry and Eva Roy breached a fiduciary duty to act in the utmost good faith in administering the estate. They claim that the actions of the two co-executors did not comport with the powers derived from the decedent's will and that the co-executors exceeded or misused their authority, thereby breaching a fiduciary duty owed to the other heirs.

A codicil to the will states in pertinent part:

> As to any real property owned by me at the time of my death, I desire and direct that it be appraised by an appraiser or appraisers (licensed or unlicensed), as deemed competent by my Co-Executors, as hereinafter named, as soon as my Co-Executors deem same to be feasible after my death, and that said real estate be thereafter, as soon as practical, sold at public or private sale, by bid, through a realtor, through negotiation, or otherwise, by my Co-Executors and with the net proceeds from the sale to be divided as provided for in Item IV above. My Co-Executors, as hereinafter named, shall not be bound by any appraisal obtained but shall simply use the appraisal as a guide in helping them to dispose of my real property. *The sales price, time of sale, method of sale, and all other decisions concerning the sale, shall be in the absolute discretion of my Co-Executors as hereinafter named.* Provided, however, it is my desire that said real property be disposed of as soon as practical after my death, and with the net proceeds to be divided as aforesaid.

(Emphasis supplied.)

The co-executors contend that this provision allowed them to sell the farm property in any manner they saw fit. We disagree.

"An executor is a quasi court officer. As such, an executor is cloaked with a presumption that he will not by any act of omission or commission fail to perform or to exceed his authority in the discharge of . . . his duties." (Citation and punctuation omitted.) *Liner v. North.*[6] "[A]n execut[or] of an estate occupies a fiduciary relationship toward parties having an interest in the estate." *Home Ins. Co. v.*

---

[6] *Liner v. North*, 188 Ga. App. 677, 678 (2) (373 SE2d 846) (1988).

*Wynn*.[7] "[T]he relationship between an executor and those he represents normally is deemed confidential and require[s] the 'utmost good faith.'" *Liner*, supra at 678 (2). Moreover, the "[d]iscretionary powers of executors and trustees are not beyond the reach of judicial inquiry. The discretion of an executor or trustee may be controlled by a court of equity when the executor or trustee has abused his authority or his trust." *Powell v. Thorsen*.[8] As fiduciaries, Henry and Eva Roy acquired a number of legal duties in relation to the beneficiaries, the other children. Among those duties were a duty to avoid potential conflicts of interest and a duty to give full and fair disclosure in a timely manner of all known things adversely affecting the appellant beneficiaries' rights in sale of the farm property. See *Liner*, supra at 679. This is true because:

> An administrator or executor is a trustee invested with a solemn trust to manage the estate under his control to the best advantage of those interested in it; and if he undertakes to sell the property of the estate, it is his bounden duty to do everything in his power to make it bring as large a price as possible. Nothing can be tolerated which comes into conflict or competition with the interests and welfare of those interested in the estate.

(Punctuation omitted.) *Ringer v. Lockhart*.[9] A beneficiary need not show that the fiduciary actually succumbed to temptation; it is sufficient to show the fiduciary allowed himself to be placed in a position where his personal interests might conflict with the beneficiary's interests. *Powell*, supra at 574 (3).

As co-executors, Henry and Eva Roy unquestionably held a position of trust and confidence with respect to the other beneficiaries of the estate. See *Ringer*, supra at 84. But here, the timing and circumstances of the sale of the family farm to Stewart raise factual questions as to whether Henry and Eva Roy exercised the utmost good faith in conducting that sale. See *Haley v. Atlantic Nat. Fire Ins. Co.*[10] (executors have duty not to undertake "any act inconsistent with the interest of the beneficiary"). Both their acts and omissions as executors of the estate, when considered as a whole, create material issues of fact as to whether Henry and Eva Roy breached their fiduciary duties. It is undisputed that Henry and Eva Roy opted to proceed with the sale of the farm notwithstanding their knowledge of the

---

[7] *Home Ins. Co. v. Wynn*, 229 Ga. App. 220, 222 (1) (493 SE2d 622) (1997).
[8] *Powell v. Thorsen*, 253 Ga. 572, 573-574 (3) (322 SE2d 261) (1984).
[9] *Ringer v. Lockhart*, 240 Ga. 82, 85 (239 SE2d 349) (1977).
[10] *Haley v. Atlantic Nat. Fire Ins. Co.*, 151 Ga. 158, 163 (106 SE 122) (1921).

gentlemen's agreement between the estate's lawyer and Jerome's lawyer. Henry and Eva Roy refused to allow and consider bids from all children interested in bidding, resulting in preferential treatment toward one child's bid. Thereafter, they attempted to conceal the identity of the purchaser from their siblings. And, Henry and Eva Roy exhibited an apparent unwillingness to consider the amount of Jerome's bid, regardless of whether that amount might greatly inure to the benefit of the other beneficiaries. Nor does any evidence indicate that Henry and Eva Roy attempted to negotiate a better deal with Tolleson whose offer stood at $335,057.40 or that they solicited any offers from nonfamily members. If, in fact, Henry and Eva Roy conducted an insider deal with one beneficiary, their actions may well have altered the testamentary scheme set in place by Gertie Bloodworth to dispose of her property in eight equal shares. *Jenkins v. Shuften*.[11]

Relying upon OCGA § 53-12-232, Henry and Eva Roy assert that the will granted expanded powers to them under that Code section. Even so, Henry and Eva Roy cite no law, and we have found none, which excused them from their fiduciary duties. We find that a jury must resolve the central question of whether Henry and Eva Roy breached their fiduciary duties. Similarly, a jury must decide whether Henry and Eva Roy committed constructive fraud or engaged in a conspiracy. See OCGA § 23-2-53 ("[s]uppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case").

2. In light of our holding in Division 1, we need not reach the remaining enumerations of error.

*Judgment reversed. Ellington and Phipps, JJ., concur.*

DECIDED MARCH 20, 2003.

*Arnall, Golden & Gregory, Ronald C. Thomason, Blake E. Lisenby*, for appellants.

*Walker, Hulbert, Gray, Byrd & Christy, Lawrence C. Walker, Jr.*, for appellees.

---

[11] *Jenkins v. Shuften*, 206 Ga. 315, 320-321 (2) (57 SE2d 283) (1950).