**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 25, 2015**

# In the Court of Appeals of Georgia

A14A2013. IN RE: ESTATE OF JOHN MALCOLM WADE.

BRANCH, Judge.

In a 1982 will, John Malcolm Wade named all five of his children as co-executors of his estate. Soon after Wade died in 1987, the probate court issued letters testamentary to all five children, thereby appointing them as co-executors. Almost 25 years later, in August 2012, appellant Mary Virginia Wade petitioned the probate court to obtain an accounting of her siblings' dealings on behalf of the estate. After a trial, the probate court concluded that the siblings had violated the terms of their father's will and ordered an accounting of the estate. Three of the four siblings – Bonnie Conner, Dorothy Vuturo, and Malcolm Wade[1] – appealed to the superior

---

[1] The fourth sibling, Carolyn, did not appear at the hearing before the probate court below and is not a party to this appeal.

court, where they moved for summary judgment on grounds including that Mary's action for an accounting was time-barred. On this appeal from the superior court's grant of the siblings' motion, Mary argues that her action is not time-barred because the estate was still open and because there was no adverse possession by her siblings that would have caused her cause of action to accrue and the statute of limitation to have run. We agree and therefore reverse.

"On appeal from the decision of a probate court, the superior court conducts a de novo investigation of the probate court's proceedings, and in doing so, will consider the records from the probate court, as well as other competent evidence which may not have been presented to the probate court." *Garren v. Garren*, 316 Ga. App. 646, 647 (2) (730 SE2d 123) (2012), citing OCGA § 5-3-29. "'It is not the province of the superior court on such an appeal to review and affirm, but to try the issue anew and pass original judgments on the questions involved as if there had been no previous trial.'" Id. at 648 (3), quoting *Knowles v. Knowles*, 125 Ga. App. 642, 645 (1) (188 SE2d 800) (1972). "To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Lau's Corp. v. Haskins*, 261

Ga. 491 (405 SE2d 474) (1991) (citations omitted). This Court reviews a trial court's grant of summary judgment de novo, construing the record in the light most favorable to the nonmovant. *Ethridge v. Davis*, 243 Ga. App. 11, 12 (530 SE2d 477) (2000).

Thus viewed in favor of Mary, the record, which is scant, shows that on December 29, 1987, all five of the Wade children were sworn in as co-executors. At some point shortly after their appointment, the siblings orally agreed that Mary would be the "coordinating executor" charged with paying the estate's bills. At some later point, however, the siblings agreed that any three of them could authorize payments by the estate and that Bonnie should administer its assets so as to wind up its affairs within six years. At an unspecified date, Mary took a share of the estate's personal property according to a system of apportionment also agreed upon by all five children. By another unspecified date, Mary had packed up the estate's papers and shipped them to Bonnie.

In March 1988, a bank sent all five siblings checks and stock certificates representing what the bank called a "final distribution" from the estate's account at that bank. Of the five siblings, only Mary did not sign and return receipts for this attempted distribution. In August 1988, Malcolm negotiated a $1 million loan from a second bank to the estate in exchange for an interest in estate assets including real

property in North Carolina and Georgia as well as nearly 9000 shares of stock in the privately held "N. G. Wade Investment Co." In March 1989, Malcolm executed a power of attorney as to estate matters in favor of Bonnie.

In February 1991, all five siblings received a summary from a certified public accountant valuing the estate's assets at approximately $1.2 million. By January 1993, Mary had received a 4-carat diamond and documents concerning the estate's assets from Dorothy. In March 1993, Mary contacted the estate's accountant to ask for documents and noted that "until I have adequate financial records to see that Estate assets are distributed properly, I will not sign any papers to close the Estate[.]" In the same document, Mary also asserted that estate funds "ha[d] been spent without [her] knowledge or consent." In March 1994, Mary asked Bonnie for copies of documents relevant to the estate, including transfers of a house and an automobile and a copy of a sale agreement concerning timber on property located in North Carolina. In January 1999, Mary paid $60,000 on her own behalf and Bonnie paid $60,000 on behalf of the four remaining siblings to close out the 1988 loan to the estate. In the same year, Carolyn demanded that Bonnie allow her to review the estate's financial records.

In January 2009, Bonnie wrote to Mary asking for her signature on an agreement between all the siblings to harvest timber from the estate's land in Charlton County and share the proceeds thereof, estimated at $27,700. The draft agreement noted that "a fire or pine beetles among other disasters could dev[a]state this gain offered to [the siblings] at any time." Bonnie also asked for Mary's signature on a second document requesting the probate court to close the estate, "all the business thereof being completed," and a recent bank statement showing an estate account balance of $9,547.76. Bonnie later averred that the siblings also sought to divide the Charlton County parcel at this time. Mary did not sign or return either the draft agreement or the request to close the estate.

In August 2012, Mary filed her petition for an accounting in probate court. As they had previously, Dorothy and Malcolm filed notarized documents in the probate court authorizing Bonnie to act on their behalf concerning the estate. Dorothy stated that Bonnie had generated "remarkable amounts of money" for the beneficiaries, had "found the highest prices to be paid for timber and land sales," and "created and oversaw many positive outcomes for her brother and sisters." After the November

2012 hearing, at which only Mary and Bonnie appeared,[2] the probate court held that that in light of Bonnie's admission that she or others had "intentionally destroyed" many estate records, "any difficulty the co-executors have had in preparing an accounting [would] be entirely self-inflicted." The probate court also concluded that "decisions regarding the administration of the estate" had been made "by a majority of the co-executors," rather than unanimously, in apparent violation of both OCGA § 53-7-5 (a)[3] and the terms of John Malcolm Wade's will, which did not contain any provision for majority rather than unanimous action. The probate court ordered an accounting within 90 days.

---

[2] The record does not include a transcript of the hearing before the probate court.

[3] OCGA § 53-7-5 (a) of the Revised Probate Code of 1998 provides that "[i]if more than one personal representative is qualified and unless the will provides otherwise. . . , [t]he personal representatives must act by their unanimous action[.]" The same subsection also specifies, however, that "[t]he personal representatives may delegate in writing to one or more of them the authority to act for all of them; provided, however, that all the personal representatives remain liable for the actions of the personal representative who is authorized to act." Id. Mary has not asserted any error as to the application of the Revised Probate Code to this dispute. See OCGA § 53-1-1 (b) (Revised Probate Code of 1998 became effective on January 1 of that year, "provided, however, that no vested rights of title, year's support, succession, or inheritance shall be impaired"); *McPherson v. McPherson*, 307 Ga. App. 548, 550-551 (1) (a) (705 SE2d 314) (applying Revised Trust Code of 2010 to earlier trust instrument and transactions where that application did not affect any "vested rights").

In January 2013, the siblings appealed the probate court's ruling to the superior court. Both sides moved for summary judgment – the siblings on the grounds that Mary's petition was time-barred and that she had refused to relinquish the diamond or otherwise agree to a division of the estate's property, and Mary on the ground that the siblings were required to render an accounting as a matter of law. In an August 2013 affidavit, Bonnie testified that the estate's only remaining undistributed assets were the 29-acre Charlton County parcel of land and the diamond Mary had received many years before. Also in August 2013, the siblings filed a counterclaim against Mary for conversion of the family diamond. In April 2014, the superior court granted the siblings' motion for summary judgment without explanation and without ruling on the siblings' counterclaim. This appeal followed.

1. As the parties agree, the first question is whether Mary's petition for an accounting is time-barred under OCGA §§ 53-7-62 (a) and 9-3-27. Mary argues that she may seek an accounting at any time while the estate remains open, while the siblings argue that Mary was required to bring such an action no later than ten years and six months after the appointment of the co-executors. Both of these contentions miss the mark.

OCGA § 53-7-62 (a) provides in relevant part that "[a]ny person interested as an heir or beneficiary of an estate or the probate court may, after the expiration of six months from the granting of letters, cite the personal representative to appear before the probate court for a settlement of accounts." OCGA § 9-3-27 provides that "[a]ll actions against executors, administrators, or guardians, except on their bonds, shall be brought within ten years after the right of action accrues." The ten-year limitation period of OCGA § 9-3-27 applies to petitions for an accounting. *Rowland v. Rowland*, 204 Ga. 603, 608 (5) (50 SE2d 343) (1948).

The five original co-executors received their letters testamentary in December 1987, with the result that Mary could have brought an action for accounting as early as June 1988, or six months after their appointment. OCGA § 53-7-62 (a). As co-executors, however, each of the five siblings owes all the others, who are also co-beneficiaries, the care required of a fiduciary. *Bloodworth v. Bloodworth*, 260 Ga. App. 466, 471 (1) (579 SE2d 858) (2003) ("[a]s fiduciaries," co-executors "acquired a number of legal duties in relation to the beneficiaries," including "full and fair disclosure in a timely manner fo all things adversely affecting" the beneficiaries' rights). Because of the high standard of care imposed on executors, the Supreme Court of Georgia has long refused to apply the ten-year statute of limitation to bar a

8

beneficiary's action for accounting by an executor in the absence of evidence that the executor has held the estate's property adversely to the beneficiary:

> [I]t is well settled in [Georgia] that not only in express or implied trusts, but in other fiduciary relations, the statute [of limitation] will not begin to run so long as the trust or duty with regard to specific property continues, is acknowledged to be subsisting, and there is no change of status to show an adverse holding of such property; that *as long as a person who is in possession of the property of another, using the same for the owner's benefit, recognizes the latter's ownership, no lapse of time will bar the owner from asserting his title as against the person in possession*; that before any lapse of time will be a bar to the owner it must appear that the person in possession has given notice, or *there must be circumstances shown which would be equivalent to notice to the owner that the person in possession claims adversely to him*; that in such a case the statute will begin to run from the date of such notice; and that until the owner has such notice he has the right to treat the possession of the other person as his own.

*Reynolds v. Dorsey*, 188 Ga. 218, 221 (2) (3 SE2d 564) (1939) (citations omitted; emphasis supplied); *Salter v. Salter*, 209 Ga. 90, 95 (2) (70 SE2d 453) (1952); *Manry v. Manry*, 196 Ga. 365, 369 (2) (26 SE2d 706) (1943) ("So long as the executors h[o]ld the title and possession of [an] estate as such, it [is] a continuing executory trust, and the bar of the statute of limitations does not run against such a trust until its

9

termination or repudiation.") (citations omitted); see also *In re Estate of Holtzclaw*, 293 Ga. App. 577 (667 SE2d 432) (2008) (concerning fee awards arising from a petition for accounting brought in 2005 against an executor appointed in 1984, but not addressing the accrual of the petitioner's cause of action).

It is true that in her 1993 letter to the estate's accountant, Mary both asked for information as to the estate and accused at least one of her siblings of "spending" at least some of the estate's assets without her "knowledge or consent." This letter was sent to the estate's accountant, not to any of her co-executors, however, and it sought to reserve Mary's own right as co-executor to review the documents, and not to exercise her right as a beneficiary to obtain an accounting. Compare *Rowland*, 204 Ga. at 604, 608 (5) (applying OCGA § 9-3-27 to bar an action for accounting where the executor, "although requested to do so," had "never made any accounting or settlement with the [beneficiaries] for their interest in [an] estate"). Further, we have seen nothing in the record to suggest that the siblings ever denied Mary's status as a co-beneficiary of any specific property owned by the estate. To the contrary, the record also shows that whatever disagreements may have arisen about the disposition of the estate, no sibling ever repudiated any other sibling's right to a proportionate share in those contents, as when the siblings presented Mary with a proposed

settlement of the estate's assets in 1988, only four months after the appointment of the co-executors, and in 2009, when they attempted to dispose of the Charlton County land parcel and to close the estate.

A question of fact thus remains as to whether any of the siblings' actions before the filing of Mary's petition put Mary on notice that they had claimed any estate property adversely to her. Because we cannot say as a matter of law that the siblings adversely held the estate's assets or repudiated Mary's claim on them at any time before Mary filed her petition, a jury must decide whether the ten-year bar of OCGA § 9-3-27 (2) began to run before that time. It follows that the trial court erred when it granted summary judgment to the siblings on this basis. *Salter*, 209 Ga. at 96-97 (affirming overruling of demurrer to petition for accounting where nothing on the face of the petition showed that the trust at issue "was not acknowledged to be subsisting or that there was any change of status to show an adverse holding by the executors that would bring this case within the statute of limitations"); *Manry*, 196 Ga. at 369 (2) (where a will did not direct when a division of an estate was to be made, a beneficiary's action for accounting was not time-barred when the executors had qualified 15 years before but had not disposed of the estate's assets until six years before the filing of the action).

11

2. The record shows that the siblings also moved for summary judgment on the ground that Mary had refused to agree to a division of the estate's property. The trial court made no finding on this question, and the parties have not briefed the matter on appeal. We therefore leave it to further proceedings below. See *City of Gainesville v. Dodd*, 275 Ga. 834, 835-836 (573 SE2d 369) (2002) (appellate court may exercise its discretion to determine whether a ground for summary judgment raised but not ruled on below is properly affirmed). Our decision also moots Mary's assertion that the trial court erred in failing to grant her summary judgment.

*Judgment reversed. Barnes, P. J., and Boggs, J., concur*.