In the Matter of the Estate of JACOB SCHULMAN, Deceased. ELIZABETH H. SNEDEKER et al., Respondents; SELMA SCHULMAN et al., as Executors of the Estate of JACOB SCHULMAN, Deceased, Appellants, et al., Respondents. (And Three Other Related Proceedings.)

Third Department, April 4, 1991

APPEARANCES OF COUNSEL

*Fried, Frank, Harris, Shriver & Jacobson (John Sullivan* of counsel), for appellants.

*Maider & Smith (Lydon F. Maider* and *Robert L. Maider* of counsel), for respondents.

**OPINION OF THE COURT**

LEVINE, J.

Respondents Selma Schulman and Steven Schulman (hereinafter collectively referred to as respondents) are executors of the estate of Jacob Schulman, who died in 1987. Petitioners are the beneficiaries of various individual trusts for which Schulman and respondent Irving Trust Company were the named trustees. Petitioners initiated these four proceedings for compulsory accountings. Petitioner Elizabeth H. Snedeker is the mother of petitioners John F. McGrath, Jr., Nancy McGrath Seagren and Mary Lynn McGrath. The separate trusts for the children of Snedeker were each created by an agreement dated April 23, 1980. The trust for Snedeker was set up in 1960. Snedeker was the daughter of the late John Naudin, a businessman in the City of Gloversville, Fulton County. Schulman was Naudin's accountant, close friend,

financial advisor and the executor of his estate. Naudin had been the owner of a corporation known as Jones and Naudin.

After Naudin's death, Jones and Naudin became a personal holding company for Snedeker and her children. Snedeker owned outright 44% of the issued and outstanding shares of the capital stock of Jones and Naudin. The remaining 56% of the corporate capital stock was divided equally among the three Snedeker children and constituted the sole corpora of the childrens' trusts. Schulman was secretary of Jones and Naudin, but the uncontradicted evidence was, and Surrogate's Court so found, that Schulman exclusively conducted the business affairs of Jones and Naudin and was solely responsible for making all investment decisions.

In 1980, Jones and Naudin held various marketable securities worth over $800,000. Beginning in 1981, however, Schulman caused the corporation to sell most of its stock portfolio and to make advances to a local enterprise known as Heat Extractor Corporation (hereinafter HEC). HEC had developed and was marketing a device that increased the efficiency of furnaces by recapturing heat normally lost up the chimney. Schulman was HEC's accountant and financial advisor. He became a director of HEC, acquired about 6% of its outstanding capital stock and he and his family loaned HEC several hundred thousand dollars. Initially, the advances from Jones and Naudin, accumulating ultimately to an aggregate of more than $600,000, were not entered as loans on Jones and Naudin's books, nor was any evidence of the debt issued by HEC. In April 1982, however, HEC gave a promissory note to Jones and Naudin for the then outstanding balance of $590,000.

Simultaneously with the delivery of the foregoing promissory note from HEC to Jones and Naudin, Schulman executed, on behalf of the latter, an instrument subordinating the note to a loan from Chemical Bank to HEC. Attached thereto was a stockholders' consent form which Schulman signed purportedly as the holder of *all* of the outstanding shares of Jones and Naudin. He signed the consent four times, as a trustee for each of the Snedeker children's trusts and as trustee for Snedeker in the trust set up in 1960. The corporate books of Jones and Naudin recorded a transfer in January 1982 of all of Snedeker's shares to the Snedeker trust, as evidenced by the delivery and transfer of the stock certificates for the shares she held outright and the issuance of a new stock certificate to the trust.

In November 1982, HEC suffered a severe financial reversal from which it never recovered, when Sears, Roebuck & Company canceled a contract giving it exclusive rights to distribute HEC's product. HEC petitioned for bankruptcy in 1984. At that time, the balance due Jones and Naudin was some $480,000. There appears to be no dispute that any distribution to Jones and Naudin out of the bankruptcy proceedings will be inconsequential. Jones and Naudin was dissolved in 1987.

At the conclusion of the consolidated, nonjury trial of petitioners' objections to respondents' accountings, Surrogate's Court surcharged the Schulman estate for the full loss to Jones and Naudin of $480,000, and allocated recovery among petitioners proportionately to their respective beneficial interests in Jones and Naudin. The court found that, although no effective transfer of Snedeker's shares in Jones and Naudin to the Snedeker trust ever took place, a fiduciary relationship existed between Schulman and Snedeker which, under the circumstances, gave rise to a trusteeship by estoppel or to a constructive trust of Snedeker's shares. Additionally, the court found a breach of fiduciary duty by Schulman as to all four trusteeships based upon the imprudent replacement of Jones and Naudin's diversified portfolio with the loans to HEC, the continued extension of credit to HEC and his conflict of interest and self-dealing.

■ The first issue to be addressed concerns respondents' contention that Surrogate's Court applied the wrong standard of care in resolving the complaints against Schulman in these proceedings. They argue that Schulman's investments in HEC were all performed purely in his capacity as the principal operating officer of Jones and Naudin and, as such, should be governed by the "business judgment rule" applicable to the conduct of corporate affairs by officers and directors. We disagree. Schulman acquired full legal authority to manage the affairs of Jones and Naudin by virtue of his trusteeships. This was sufficient for the application of trustee standards to his conduct of the affairs of the corporation, and for the imposition of a surcharge for losses to the trust estates due to his faulty management (see, Matter of Hubbell, 302 NY 246, 254-255; see also, Matter of Horowitz, 297 NY 252, 258-259; Matter of Shehan, 285 App Div 785, 793-794). The liability of a trustee of a controlling interest in a corporation can arise out of imprudent corporate investment policy or a conflict of interest with respect to corporate decisions (see, Matter of Hubbell, supra, at 255-259).

■ Alternatively, respondents claim that the Schulman estate may not be surcharged with respect to Snedeker's losses from Jones and Naudin's unfortunate investments in HEC because Schulman never became a trustee for her shares. Respondents are correct that Schulman's entirely unilateral acts in purportedly transferring Snedeker's shares in Jones and Naudin to the Snedeker trust were legally ineffective to create an express trust over those shares (see, UCC 8-307, 8-309; *Kyle v Kyle*, 111 AD2d 537, 539, *lv denied* 66 NY2d 604). Moreover, it is questionable whether a constructive trust or a trusteeship by estoppel for Snedeker's shares was ever established. Both doctrines would require some detrimental reliance by Snedeker on a representation or promise by Schulman regarding the transfer of the shares (see, 57 NY Jur 2d, Estoppel, § 60, at 88; *see also, Hornett v Leather*, 145 AD2d 814, 815, *lv denied* 74 NY2d 603). Such reliance is absent here, . however, because the purported transfer took place without Snedeker's knowledge. Nonetheless, the findings of Surrogate's Court, amply supported by the record, afford a basis for Snedeker to recover directly from the Schulman estate on the basis of his breach of fiduciary duty with respect to her interest in Jones and Naudin.

Contrary to respondents' contention, Snedeker was not relegated to a stockholder's derivative action on behalf of Jones and Naudin based upon the losses from the HEC loans. The record overwhelmingly demonstrates the correctness of the court's finding that Schulman "stood in a 'confidential relationship' to * * * Snedeker". Schulman was the executor of Snedeker's father's estate and he was Snedeker's trustee with respect to other properties in which she was beneficially interested. He was a trusted personal friend and advisor. The record clearly supports the inference that, because of that personal and professional relationship of confidence, Snedeker totally entrusted Schulman with her interests in Jones and Naudin. He held her power of attorney and stock powers signed by her in blank. He was given complete control of all of Jones and Naudin's books, records and stock certificates. Thus, we agree with the conclusion of Surrogate's Court that Schulman was Snedeker's fiduciary with respect to her interests in Jones and Naudin. Moreover, the fiduciary duty owed by Schulman was separate, distinct from and more pervasive than the fiduciary duties generally owed shareholders by a corporate officer or director. Therefore, Snedeker could sue directly for her losses in Jones and Naudin caused by Schul-

man's wrongful breach of duty to her in mishandling the affairs of the corporation. "The fact that an act may constitute a wrong to a corporation does not bar a stockholder from obtaining individual redress where the act also constitutes a separate and distinct wrong to the stockholder * * *. [Where a plaintiff] is asserting that he has been damaged individually as a result of [the defendant's] breach of contractual and fiduciary duties, [the plaintiff] is not required to bring an action as a stockholder" *(Weiss v Salamone,* 116 AD2d 1009, 1010; *see also, Matter of Auditore,* 249 NY 335, 341-342, 345-347; *General Rubber Co. v Benedict,* 215 NY 18, 21-22, 25 [Cardozo, J.]; *Giblin v Murphy,* 97 AD2d 668, 670-671, *lv dismissed* 62 NY2d 605, 943; *Chalmers v Eaton Corp.,* 71 AD2d 721, 722-723).

Finally, we conclude that the preponderance of the evidence supports the imposition of liability upon respondents for Schulman's breach of fiduciary duties to all petitioners, based both on his violation of the "prudent man rule" *(see, Matter of Newhoff,* 107 AD2d 417, 423, 427-428, *lv denied* 66 NY2d 605; *Berardi v W. T. Lane, Inc.,* 39 AD2d 936, 937-938, *appeal dismissed* 31 NY2d 672), and for the violation of his duty of undivided loyalty *(see, Birnbaum v Birnbaum,* 73 NY2d 461, 466-467).

We have examined respondents' remaining contentions and find them equally unpersuasive.

MAHONEY, P. J., CASEY, MERCURE and HARVEY, JJ., concur.

Decrees affirmed, with costs.