A10A1020, A10A1021. WOLF et al. v. MIDDLETON et al.;
and vice versa.

(700 SE2d 598)

ELLINGTON, Judge.

These appeals arise from a suit that was initiated by a residential real estate broker, Reynolds Plantation Realty, LLC. The broker, the holder of $50,000 in earnest money paid by buyers Douglas and Christine Wolf to sellers Charles and Kelly Middleton pursuant to their real estate sales contract, filed a complaint for interpleader, asking the Superior Court of Greene County to order the parties to the contract to litigate their rights to the earnest money. The broker also sought attorney fees and court costs. The court discharged the broker from any liability for holding the funds, awarded it $5,764.50 in attorney fees and costs to be paid from the earnest money, and ordered the Wolfs and the Middletons to litigate their claim to the earnest money remaining in the court's registry.

The court realigned the Wolfs as plaintiffs and the Middletons as defendants. In their motion for summary judgment, the Middletons argued that they were entitled to the earnest money because the Wolfs failed to meet their obligations under the real estate sales contract and thus, pursuant to the terms of the contract, forfeited the earnest money. The Wolfs also moved for summary judgment arguing that they were entitled to the earnest money because they properly rescinded the contract based upon the Middletons' fraud. The court entered summary judgment in favor of the Middletons as to their right to the earnest money, cast costs against the Wolfs, and reserved the issues of damages and of attorney fees for future determination. The court later entered an order awarding the

Middletons $44,235, the amount of earnest money remaining in the court's registry, and $1,598 in attorney fees and costs of litigation. In Case No. A10A1020, the Wolfs appealed from this order, contending the trial court erred in granting judgment in favor of the Middletons, in denying their motion for summary judgment, and in awarding attorney fees to the broker. In Case No. A10A1021, the Middletons filed a cross-appeal from the portion of the order awarding attorney fees and costs of litigation to them.

### Case No. A10A1020

1. The Wolfs contend the trial court erred in denying their motion for summary judgment and in granting summary judgment to the Middletons. Specifically, the Wolfs argue that they were entitled to the return of their earnest money because they had proved a right to rescind the real estate contract at issue based upon the Middletons' fraud in concealing a defective seawall on property adjacent to the Middletons' lakefront home.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Thus, in order to prevail on their motion for summary judgment, the Wolfs were required to prove that the undisputed facts of this case established that the Middletons committed fraud and that such fraud entitled them to rescind the contract. Id. To defeat the Middletons' motion, they were required to show that material issues of fact remained for jury resolution on these issues. See id.

The record shows that the Middletons owned a home in the Timber Ridge Subdivision on Lake Oconee in Greene County. In 2005, they listed the property for sale with Coldwell Banker. Before listing the home, Kelly Middleton prepared for the broker a list of the home's amenities, which included a "375 ft. granite seawall with columns, dock w/boatlift in deep water cove." The Wolfs viewed the property and made an offer which did not result in a contract. In 2006, the Middletons re-listed the property for sale with Reynolds Plantation Realty, LLC. The Multi-State Listing Service described the property as "Lakefront," and under the "remarks" section noted "granite seawalls." Although the Middletons built and maintained the seawall and dock, they did not own the shoreline property upon which they were constructed. Rather, the Middletons enjoyed the use of the property and were allowed to build on it pursuant to a license agreement with Georgia Power Company, the entity which owns

Lake Oconee and its shoreline. The Timber Ridge Subdivision plat, the Middletons' deed, and the Middletons' license agreement with Georgia Power were filed in the Greene County public records office. The survey and site plan for the Middleton property was on file with the Reynolds Plantation Architectural Review Board and was available for the Wolfs' inspection.

The Wolfs did not survey the Middleton property, nor did they do a title search; however, Christine Wolf deposed that she received a copy of the Middletons' site plan from her agent. Both the site plan and the subdivision plat reveal that the Middletons' property does not extend to the shoreline. Moreover, Charles Middleton marked the boundary between his property and Georgia Power's by painting yellow marks on trees located on or near the property line. Although the Wolfs assumed that the Middletons owned the shoreline upon which the seawall was built, there is no evidence in the record that the Middletons actually made any representation that they owned it.

On October 23, 2006, before making their second offer, the Wolfs inquired of the Middletons through their agent whether there had "been any changes or work done on the property" since their last offer. The Middletons responded that they had "done some repairs on the seawall and have done some repair on the dock. These were minor repairs. They are putting down pine straw tomorrow." The Wolfs visited the property on October 23 and again on October 25. On one visit, Douglas Wolf swam in the lake next to the seawall. He noticed some rods sticking out of the wall, complained they were unsafe, and was assured by his agent that if they were a problem, an inspection would reveal that. Kelley Middleton showed the Wolfs where the repairs had been made, and explained that the repairs consisted of backfilling the area behind the granite seawall with concrete and dirt and then covering it with a mulch of pine straw.

On October 27, 2006, the Wolfs made an offer on the Middleton property. The Wolfs' lawyer reviewed the offer and suggested several stipulations, some of which were included in the final sales contract, which was executed on November 2, 2006. The contract, however, did not contain any stipulation specifically concerning the condition of the seawall or the need for any repairs to it. The contract provided that the Wolfs had 14 days to inspect the property and to request repairs. The Wolfs could extend the inspection period for up to seven days to obtain an additional inspection if needed. At the end of the inspection period, the Wolfs were required to provide the Middletons with

> (1) a signed written amendment to this Agreement requesting Defects to be repaired and/or replaced, and (2) a copy of all reports of Inspectors describing those Defects. If Buyer

does not timely present the written amendment and Inspection report(s), Buyer shall be deemed to have accepted the Property "as is."

On November 10, 2006, Rusty Hellman of Coastal and Commercial Home Inspections inspected the property. Christine Wolf was present for the inspection. As Hellman inspected the seawall, Christine Wolf stepped on the ground behind the granite seawall and her foot sank into the soil. In his inspection report, Hellman noted "several areas of water intrusion under seawall to [the] lake." He further noted that, although repairs had been done, the seawall's drainage system was "not adequate." Hellman advised the Wolfs to have the seawall inspected by an engineer.

The Wolfs attempted to hire Steven Franco, an engineer, to inspect the seawall, but he was not available during the inspection period. The Wolfs did not hire another engineer to do the inspection. Based on conversations with Franco, the Wolfs were under the impression that repairs to the seawall could be a "tremendous expense," possibly exceeding $200,000, depending on the nature of any defect.

The record shows that the seawall was built in 2004 for a total cost of $28,350. Areas of erosion behind the seawall were repaired at no cost to the Middletons by the seawall builder, Howard Hughes. The Middletons, who disclosed these repairs to the Wolfs, were unaware that the seawall suffered from any continuing defect. Moreover, Hughes told the Wolfs that he would "stand behind" his work.

At the end of the inspection period, the Wolfs did not provide the Middletons with a list of defects to be repaired, nor did they request additional time for another inspection, despite the Middletons' willingness to give them additional time. Instead, they sent a letter to their agent on November 15, 2006, announcing their intent to rescind the purchase agreement based upon the Middletons' alleged nondisclosure of defects with the seawall. On November 16, 2006, the Wolfs' agent specifically warned her clients by e-mail:

> For now, you should itemize all requested repairs resulting from the inspection report in writing, as I sent to you yesterday, and ask for additional time for the inspections on the seawall you need. After the additional inspection(s) has/have been completed, you can address any issues revealed with the [Middletons]. If you terminate based on the letter you sent me, the [Middletons] will not release the earnest money and have indicated they will put the house

back on the market. Most likely, the legal system will determine the disposition of these funds.

The Wolfs did not follow their agent's advice; rather, they rescinded the contract and demanded that the broker release the earnest money to them. The broker then filed the interpleader action which resulted in this lawsuit.

The Wolfs contend they were entitled to rescind the contract because the Middletons committed fraud by (1) misleading them into believing that they owned the property on which the seawall was built, (2) by failing to disclose the fact that they did not own the shoreline property, and (3) by failing to disclose that the seawall was defective in that it was negligently constructed and maintained.

"The tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." (Citations omitted.) *Remax North Atlanta v. Clark*, 244 Ga. App. 890, 893 (537 SE2d 138) (2000).

In all cases of fraud involving a concealment of a material fact, scienter, or knowledge of the alleged falsehood, is an essential element of the tort. In fraudulent concealment actions the allegedly defrauded party must prove that the alleged defrauder had actual, not merely constructive, knowledge of the fact concealed. There must be some evidence of the silent party's actual knowledge that the defect exists at the time of the sale from which his moral guilt in concealing it can be inferred.

(Citations and punctuation omitted.) Id. at 894.

The Wolfs failed to carry their burden of identifying evidence establishing as a matter of law either a false representation or the concealment of a material fact. Further, the evidence does not support an inference that the Middletons misrepresented that they owned the property upon which the seawall was built or that they lied concerning the seawall's state of repair.

Specifically, the undisputed evidence established that the Middletons built, used, and enjoyed the seawall and dock noted under the "remarks" section of their MLS listing pursuant to a license agreement with Georgia Power, an agreement which was of public record and in their chain of title. While they did not specifically inform the Wolfs of the license agreement, there is no indication in the record that they tried to conceal the fact of its existence. Charles Middleton had marked the trees on the property line with yellow paint, the property line was noted on the plat of survey

provided to the Wolfs, and the license agreement and deed were public records available for their inspection. As we have held, "[i]t is presumed that a purchaser has examined every deed and instrument affecting the title. He is charged with notice of every fact shown by the records, and is presumed to know every other fact which an examination suggested by the records would have disclosed." (Citations and punctuation omitted.) *Hardage v. Lewis*, 199 Ga. App. 632, 633 (405 SE2d 732) (1991).

Further, even if the Middletons' description of the seawall and dock in the MLS listing could be construed as misstatements concerning the extent of their property line, the Wolfs, though represented by an agent and an attorney, did not examine any of the public records available to them, they did not conduct their own survey, and there is no evidence that they questioned the Middletons or their agent concerning the property lines. As the Supreme Court of Georgia has held, "a party buying real property who makes no attempt to discover the boundaries of the property cannot be said to have justifiably relied on a misrepresentation by the seller regarding those boundaries." (Citation and punctuation omitted.) *Brakebill v. Hicks*, 259 Ga. 849, 852 (388 SE2d 695) (1990). In *Brakebill*, the buyers purchased a condominium that they believed, based upon the representations of the seller's agent, included the use of an ocean-front deck and barbeque area. Id. at 850. Those, facilities, however, were not part of the condominium property. Id. Even though the agent's statements were incorrect, the buyers were not exempt from demonstrating that they exercised due diligence to discover the true boundaries of the property, which, in that case, they did not. Id. Because the Wolfs likewise failed to exercise due diligence as a matter of law in ascertaining the property line, they are not authorized to rescind the contract based upon the Middletons' alleged misrepresentations. Id. at 852.

Finally, the evidence does not support an inference that the Middletons had knowledge of a defect with the seawall. The Middletons verbally disclosed[1] that a portion of the seawall had suffered from erosion in the past and that, as far as they knew, the eroded areas had been repaired properly by the builder. The only evidence tending to support the Wolfs' contention that the seawall was negligently constructed was from the Wolfs' inspector, who opined that the seawall had inadequate drainage, and there is no evidence

---

[1] The Wolfs argue that the Middletons should have disclosed the repairs to the seawall on the Seller's Property Disclosure Statement. However, "[t]he law does not require sellers to disclose every past repair made to their homes; rather, they must inform potential buyers of current defects of which they are aware." (Citations omitted.) *Ainsworth v. Perreault*, 254 Ga. App. 470, 475 (2) (563 SE2d 135) (2002).

that this alleged defect would have been patent to the Middletons. It is undisputed that the Middletons told the Wolfs exactly what repairs had been done and by whom, pointed out the areas that were repaired, and provided the Wolfs with time to have the seawall inspected. This evidence does not support an inference that the Middletons knowingly attempted to conceal a known defect. See *Ainsworth v. Perreault*, 254 Ga. App. 470, 475 (2) (563 SE2d 135) (2002).

Because the Wolfs have failed to show that a jury issue remains on their claims, the trial court properly granted summary judgment to the Middletons.

2. The Wolfs contend the trial court erred in awarding attorney fees and costs of litigation to the broker, Reynolds Plantation Realty, LLC. The Wolfs, however, failed to support this claim of error with citation to legal authority or legal analysis, as required by Court of Appeals Rule 25 (c) (2). Therefore, this claim of error is deemed abandoned. *Gore v. State*, 272 Ga. App. 156 (2) (611 SE2d 764) (2005); *Dixon v. MARTA*, 242 Ga. App. 262, 266 (4) (529 SE2d 398) (2000) (Legal analysis requires, "at a minimum, a discussion of the appropriate law as applied to the relevant facts.").

### Case No. A10A1021

3. The Middletons failed to file a brief in this case setting forth their enumerations of error, legal analysis, and citations to the record and legal authority as required by Court of Appeals Rules 22, 23, and 25. Because the Middletons failed to comply with this Court's rules, their cross-appeal is hereby dismissed.

*Judgment affirmed in Case No. A10A1020. Appeal dismissed in Case No. A10A1021. Andrews, P. J., and Doyle, J., concur.*

DECIDED JULY 28, 2010 —
RECONSIDERATION DENIED SEPTEMBER 1, 2010.

*Stanley M. Lefco*, for appellants.
*M. Barton Rice, Jr.*, for appellees.