**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 29, 2013**

# In the Court of Appeals of Georgia

A12A2516. ROLLINS, et al. v. ROLLINS, et al.

RAY, Judge.

Four siblings, Glen W. Rollins, Ruth Ellen Rollins, Nancy Louise Rollins, and O. Wayne Rollins II, are the beneficiaries of several trusts (the "Beneficiaries"). The Beneficiaries brought this action for, among other things, breach of trust and breach of fiduciary duty, against their father, Gary W. Rollins, and their uncle, R. Randall Rollins, individually and as trustees of the trusts at issue; and a family friend, Henry B. Tippee, in his capacity as a trustee of the trusts at issue. The parties cross-motioned for summary judgment, and the Beneficiaries appeal from the trial court's order. The Beneficiaries enumerate as error the trial court's refusal to order an accounting of family entities held within the trusts and its refusal to find that various actions by the appellees taken at the entity level, rather than the trust level, amounted to breaches

of trust and of fiduciary duty. Additionally, the Beneficiaries contend that the trial court erred in its findings regarding actual harm and in granting summary judgment to the appellees. For the reasons that follow, we reverse the judgment and remand the case to the trial court for further proceeings.

Pursuant to OCGA § 9-11-56 (c),

> on appeal from the denial or grant of summary judgment[,] the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, when viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

Properly viewed, this voluminous, 51-part record covering some 40 years of trust history shows the following relevant facts: O. Wayne Rollins (the "Settlor") is the founder of a number of extremely successful enterprises yielding assets worth several billion dollars. He established the five trusts at issue in this litigation: the Rollins Childrens Trust ("RCT Trust") and four Subchapter S-Trusts. These five

---

[1] (Citations omitted.) *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

trusts further hold interests in a complex web of family entities and holding companies, as described below.

*RCT Trust*

The Settlor established the irrevocable RCT Trust in 1968 for the benefit of his grandchildren and great-grandchildren. The Beneficiaries at issue here are four of the nine grandchildren who benefit from the RCT Trust. The Settlor's sons, Gary and Randall, and the Settlor's friend, Tippie, are trustees of the RCT Trust. Under the terms of the trust instrument, a portion of the trust principal, as determined by a calculation contained in the indenture, was distributed to the nine grandchildren, including the four Beneficiaries at issue here, on their 25th and 30th birthdays. The RCT Trust terminates when the last of the nine beneficiaries dies, with any remainder to be apportioned between their descendants. The first half of the principal has been distributed to and accepted by all the grandchildren, including the Beneficiaries here. The trustees are authorized to encroach on the corpus, at their discretion, for the grandchildren's benefit, and to distribute income or not at their discretion. This trust originally was funded primarily with Rollins, Inc. stock. In the 1970s and 1980s, primarily to reduce tax liability, the Settlor created several family entities to hold assets within the trust: ROL, Inc., LOR, Inc., the Rollins Grandchildren's Partnership

("RGP"), and the Rollins Holding Company ("RHC") (collectively, the "Family Entities").

*The Subchapter S-Trusts*

In 1986, again to limit tax liability, the Settlor established irrevocable Subchapter S-Trusts for the benefit of each of his nine grandchildren, including the four Beneficiaries at issue here. Gary is the sole trustee of the S-Trusts at issue in this litigation. The original assets in the S-Trusts were interests in LOR, Inc. The same year that the S-Trusts were created, the trustee purchased the S-Trusts' LOR, Inc. stock from RGP and RHC with promissory notes, thereby using debt to acquire the LOR, Inc. stock. Further, in 1988, the Settlor created another family entity called the Rollins Investment Fund ("RIF"), held within the S-Trusts. One of the purposes of RIF was to minimize tax liability.

The trust indenture establishing the S-Trusts requires the trustee "to distribute at least annually all of the trust income to the beneficiary of such trust," but gives the trustee discretion to determine what is income and what is principal. The trust indenture further requires that when a beneficiary turns 45 years of age, "the Trustee shall turn over to each beneficiary, free of trust, all property then remaining in such

beneficiary's trust, subject to any unpaid indebtedness of such trust." Only one of the four Beneficiaries, Glen Rollins, has turned 45.

*The Claims*

The Beneficiaries here, in general, allege that following the Settlor's death, the appellees made various changes to the structure, leadership, holdings, and distribution methods used within the various Family Entities that are held within the S-Trusts and the RCT Trust. The Beneficiaries contend that the appellees have shifted power from the Beneficiaries to themselves, have ensured that the Beneficiaries' interests in the Family Entities are illiquid and nontransferable rather than liquid and marketable, and have established non pro rata distribution systems, all in contravention of the trust indentures and the Settlor's intent. These actions and others, the Beneficiaries contend, amount to breaches of trust and of fiduciary duty.

1. The Beneficiaries first contend that the trial court erred in failing to order a "judicial accounting and an accounting of the entities *controlled by the trustees* which hold the trust assets."[2] We agree.

---

[2] (Emphasis supplied.) In this compound enumeration of error, the Beneficiaries also contend that the trial court "erred in entering summary judgment for [the trustees] on all other equitable relief arising from the [trustees'] intentional refusal to provide the beneficiaries with accurate information about their trusts." That relief includes removal of trustees, receivership for major trust entities, and recission

5

On motion for partial summary judgment, the Beneficiaries did not seek an accounting, but rather sought only "summary judgment that Defendants have breached their fiduciary duties and committed breaches of trust. Plaintiffs do not seek summary judgment as to any particular remedy for these breaches in this motion." The trial court granted the Beneficiaries' summary judgment motion on this issue, finding that the appellees engaged in breaches of trust and fiduciary duties by their "failure to provide an accounting of the trust assets," and finding that only after the complaint in the instant case was filed did the trustees provide a report on trust assets prepared by Ernst & Young. The trial court then denied "all other relief associated with this claim." Noting that the Beneficiaries had received "complete relief" on their requests related to the accounting, the trial court then granted the appellees' motion

---

of self-dealing transactions. However, the Beneficiaries provide no argument and cite no authority in support of these conclusory statements. "In the absence of proper argument and corresponding citation to authority . . . , we will not consider this [portion of] the enumeration." *Habel v. Tavormina*, 266 Ga. App. 613, 617 (2) (597 SE2d 645) (2004) (citation and punctuation omitted.) See also Court of Appeals Rule 25 (c) (2). The Beneficiaries additionally argue on appeal that the trial court should hold a hearing to approve the Ernst & Young accounting that the trustees already have supplied. However, the Beneficiaries neither sought this relief nor received a ruling on it below. "Appellate courts do not consider whether summary judgment has been granted for a reason not raised below because, if they did, it would be contrary to the line of cases holding that a party must stand or fall upon the position taken in the trial court." *Pinnacle Properties V, LLC v. Mainline Supply of Atlanta, LLC*, __ Ga. App. __ (2) (735 SE2d 166) (2012) (punctuation and footnote omitted).

6

for summary judgment as to all claims in the Beneficiaries' second amended complaint. The second-amended complaint requested an order requiring a "third-party master or receiver" to review the books of the RCT Trust and the Subchapter S-Trusts, as well as the books of LOR, Inc. and RIF, which are entities held within the trusts; additionally, the complaint requested a full accounting of the trusts and investments of the trust property. The record shows that the Ernst & Young accounting that the Beneficiaries already received covered only the S-Trusts and the RCT Trust.

OCGA § 53-12-243 (a) and (b) (1) provide that

[o]n reasonable request by any qualified beneficiary . . . the trustee *shall provide* . . . a report of information, to the extent relevant to that beneficiary's interest, about the assets, liabilities, receipts, and disbursements of the trust, the acts of the trustee, and the particulars relating to the administration of the trust, including the trust provisions that describe or affect such beneficiary's interest. A trustee *shall account at least annually* . . . to each qualified beneficiary of an irrevocable trust to whom income is required or authorized in the trustee's discretion to be distributed currently.[3]

_____

[3] (Emphasis supplied.)

The RCT Trust, by its terms, further provides for the Beneficiaries to receive periodic "statements disclosing [the] condition of the trust estate" not more often than every six months. The terms of the S-Trusts do not address accountings.

The appellees counter that they should not have to provide an accounting of the family entities held within the trusts because such an accounting is required only if the trust holds a controlling interest in the entity, and that the S-Trusts, for example, hold only minority interests in the family entities. The appellees base their argument upon a line of cases from New York courts that they contend hold that fiduciaries are obligated to account for corporate assets held in trust if either they or the trust hold a controlling, majority position in the corporation at issue. We find that these cases, which are of course persuasive authority in our state, are instructive, but must be read more broadly.

For example, in a case involving an estate in which the decedent and a fiduciary had been co-stockholders in close corporations holding realty, the beneficiaries requested an accounting, which the court granted, finding that the fiduciary, when his individual holding in the corporation was combined with that of the estate of which he was executor, held the "balance of power over the conduct of

8

the corporation solely by virtue of his possession of the estate's one-third interest therein."[4] The court went on to say,

> [i]t is not disputed that where a corporation is wholly owned by an estate full report of corporate transactions may be exacted of the fiduciaries. . . . It is also an established principle that *in the ordinary case* where an estate has only a minority interest in a corporation the fiduciaries cannot be required to render an account of corporate transactions. This principle is one of practical necessity. *Fiduciaries cannot be ordered to do what is impossible.* But where as here the fiduciaries control a corporation by the help of the estate stock interest added to the stock interest held personally by one of them they are not disabled to make such accounts and are therefore under obligation to do so.[5]

The evidence in the instant action, however, indicates that this is not "the ordinary case" in which a minority interest equates to a lack of control making it "impossible" for fiduciaries to produce the information requested. The appellees in the instant case do not argue that they lack the control to provide the information

---

[4] *In re Witkind's Estate*, 4 N.Y.S.2d 933, 946 (N.Y. Sur. Ct. 1938).

[5] (Emphasis supplied.) Id. at 945.

Beneficiaries seek, nor do they contest the trial court's determination that they are "controlling members of the various family entities."[6]

The parties point us to no Georgia authority directly on point, and we could find none. However, several cases from other jurisdictions are instructive. In one case, a New York court directed a fiduciary "to exhibit all information *within his control* which bears on the fortunes of the estate."[7] In another case, a New York court first recognized that "a trustee is obligated to render a full and accurate account of all his transactions in the performance of his trust, including the management of a corporation, the *controlling[] interest* of which is in the trust."[8] That court then went on to find that even where a trustee owned stock in a national bank in which the trust

---

[6] Trustee Randall Rollins deposed that he and co-trustee Gary Rollins controlled distributions into the RCT via their control of the family entities created after the Settlor's death. Further, the record shows that Gary and Randall control the majority partnership interests in RIF, and hold all of the voting shares in RHC equally. See *Monterrey Mexican Restaurant of Wise, LLC v. Leon*, 282 Ga. App. 439, 448 (4) (638 SE2d 879) (2006) (where two parties together control the majority of stock in a corporation, one alone may be said to have control when other factors show he is in control).

[7] (Emphasis supplied.) *In re Barrett's Estate*, 6 N.Y.S.2d 689, 690 (N.Y. Sur. Ct. 1938).

[8] (Citations omitted; emphasis supplied.) *In re Murray's Will*, 88 N.Y.S.2d 579, 581-582 (N.Y. Sur. Ct. 1949).

held a minority interest, the trustee still had to provide the list of stockholders the remainderman requested because

> the [c]ourt may control and direct the actions of the fiduciaries, and this may, whether directly or indirectly, affect their actions as officers and directors of corporations of the stock which they hold in their fiduciary capacities, and by virtue of the same power, the [c]ourt may direct a fiduciary to exhibit *all information within its control* which bears on the fortunes of the estate and to take whatever actions may be necessary to get the required data.[9]

The general principle here, that a trustee is obligated as a fiduciary to provide beneficiaries information that is *within his control*, when coupled with the mandates of OCGA § 53-12-243 (a) and (b), leads us to conclude that the trial court erred in refusing to order an accounting of the Family Entities held within the trusts.

The appellees again cite no Georgia law, nor do we find any, requiring that a trustee hold a controlling interest in an asset held within a trust before an accounting or report of information is required as to that asset or entity. The Georgia Code

---

[9] (Citations omitted; emphasis supplied.) Id. at 582.

merely requires that a trustee "shall provide" information about, inter alia, the trust's assets.[10] The appellees do not contend that the family entities are not assets.[11]

> [W]here the [c]ourt has the [power] to require fiduciaries to report the transactions of corporations in which the estate is interested the question of appropriateness should not be raised. Whether the facts revealed by an accounting in behalf of the corporation activities are or are not important can only be known after they are exhibited. As a practical matter therefore in every case where the court can require disclosure of corporate affairs on an accounting by estate fiduciaries it will exercise its power in favor of disclosure.[12]

Thus, given OCGA § 53-12-243 (a)'s clear directive that trustees "shall"[13] provide a report of information about, inter alia, trust assets, liabilities, and "the particulars relating to the administration of the trust," we find that the trial court erred

---

[10] OCGA § 53-12-243 (a).

[11] See, e.g., *Jones-Shaw v. Shaw*, 291 Ga. 252, 253 (1) (728 SE2d 646) (2012) (a closely-held corporation can be a marital asset subject to equitable division in a divorce).

[12] *In re Witkind's Estate*, supra at 944.

[13] There are, at present, no cases construing OCGA § 53-12-243 (a). However, rules of statutory construction typically recognize that "'shall' is generally construed as a mandatory directive." *Beach v. B. F. Saul Property Co.*, 303 Ga. App. 689, 695 (2) (a), n. 4 (694 SE2d 147) (2010) (citation omitted).

in not ordering an accounting of the Family Entities under the appellees' control.[14] The trial court's judgment on this matter is therefore reversed, and the case remanded on this issue for further proceedings not inconsistent with this opinion.

2. The Beneficiaries contend that the trial court erred in failing to find that the appellees breached their fiduciary duties for actions taken at the entity level. They argue that the appellees' actions related to or taken through Family Entities, including but not limited to LOR, Inc., RIF, and RHC, which are held within the trusts, should be subject to fiduciary duties like those that would apply to actions taken at the trust level itself. The appellees, while not addressing this point head-on, argue that any conflict of interest in their dual roles as trustees and as managers of the Family Entities were sanctioned by the Settlor.

The Beneficiaries claim the appellees breached their duties in shifting assets from the trusts to the Family Entities held within the trusts; in managing and administering the Family Entities; in making distributions from the Family Entities; and in altering the voting rights and control of the Family Entities. The court below

---

[14] See Uniform Superior Court Rule 46 (A) and (B) (giving trial courts, on their own motion or on request of the parties, the authority to appoint a special master to conduct an accounting after first giving parties notice of the appointment and an opportunity to be heard). See also *Standard Bldg. Co., Inc. v. Schofield Interior Contractors, Inc.*, 315 Ga. App. 516, 519-520 (3) (726 SE2d 760) (2012).

13

held, specifically, that because the appellees' management decisions and distributions took place at the entity level, rather than at the trust level, the Beneficiaries' "reliance on the S-Trust terms" to establish their breach of fiduciary duty and breach of trust claims were "misplaced." The trial court likewise found "no actionable misconduct" in the appellees' decision to condition distributions upon the Beneficiaries' adherence to a behavioral code of conduct that was not contained in the trust indenture because the "distribution scheme was not implemented at the S-Trust level." For the reasons that follow, we disagree and find that, as a matter of law, the appellees may not shed their fiduciary duties in their management of and distributions from Family Entities under their control held within a trust.

(a) *Fiduciary responsibility for actions at the entity level.* Before initiating an analysis of whether the appellees' specific actions at the entity level breached duties of trust or fiduciary duties, we first must examine whether their fiduciary duties owed to the Beneficiaries by virtue of the RCT Trust and the S-Trusts extend to their actions related to the Family Entity held within that trust.

While Georgia case law directly on point is sparse, our Supreme Court recognized in *Hanson v. First State Bank and Trust Co.*[15] that fiduciary duties may

[15] 259 Ga. 710 (385 SE2d 266) (1989).

14

adhere to a non-trustee whose control of entities within a trust is such that his actions may be attributed to the trustee itself. In *Hansen*, a bank was appointed trustee and the beneficiaries' uncle, who was not a trustee, was an executive at the trustee bank. The uncle held substantial shares of bank stock and also managed a partnership that operated family businesses held within the trust.[16] The Supreme Court upheld the removal of the bank as trustee, reasoning that the bank was controlled by human actions, in this case, those of the non-trustee uncle, such that "the conflicts of interest between the bank's human agent and the trusts of which it is trustee must be attributed to the bank itself."[17] In another case, our Supreme Court found that a corporate director who was not per se a trustee nonetheless had a fiduciary duty to shareholders whose property was under his control, and thus, the corporate director had the same obligation as a fiduciary fully to disclose material facts related to the value of the property at issue.[18] The Court found that "[n]o process of reasoning and

---

[16] Id. at 710 (1) (a).

[17] (Footnote omitted.) Id. at 712 (5) (c).

[18] *Oliver v. Oliver*, 118 Ga. 362 (45 SE 232) (1903).

15

no amount of argument can destroy the fact that the director is, in a most important and legitimate sense, a trustee for the stockholder."[19] The Court further reasoned that

> [e]quity abhors mere names, and looks to the substance. Whether the corporation be treated as an enlarged and amplified form of partnership, and the director as managing partner, or whether he is called an agent or trustee . . . he occupies a fiduciary position and is essentially within the rule which requires agents, attorneys, bailees, partners, trustees, or other fiduciaries to exercise the highest degree of good faith as to all matters connected with the property committed to their care.[20]

Thus, Georgia recognizes that the director with control of an entity held within a trust may have a fiduciary duty to those who hold assets in that entity, even if the director is not per se serving in the role of trustee as to the entity itself.

Other jurisdictions that have addressed this issue have determined that corporate directors who are also trustees, even when acting in their capacity as directors of corporations held within the trust, still owe fiduciary duties to trust beneficiaries. For example, in a case involving a director who held a 50 percent stake in a corporation whose shares composed the corpus of a trust of which the director

---

[19] (Citations omitted.) Id. at 367.

[20] (Citations omitted.) Id. at 369-370.

16

was also a trustee, an Alabama court determined that where a "fiduciary has overlapping obligations as both a director and a trustee sharing a common interest, the law imposes a special duty on the fiduciary to deal fairly with both sides."[21] In this dual role, the "trustee[] should have acted with complete and undivided loyalty to his trust, excluding all personal or selfish interests as well as those of third parties."[22] In another case, a New York court found that where a fiduciary has "working control" of a corporation in which the estate or trust holds an interest, even if his personal share in the corporation combined with the trust's share amounts only to a minority interest, actions taken in his capacity as president of the corporation will subject him to accountability for breach of fiduciary duty regarding the trust.[23] Further, in *In the Matter of the Estate of Schulman*,[24] a New York court found that a trustee was

---

[21] (Citation omitted.) *Jones v. Ellis*, 551 So.2d 396, 403 (Ala. 1989).

[22] (Citation omitted.) Id. (within dual role as director and trustee, the imprudent management as a director of a company held within a trust equated to imprudent management of the trust corpus).

[23] *In the Matter of Scuderi*, 667 N.Y.S.2d 913, 913 (N.Y. App. Div. 1998).

[24] 568 N.Y.S.2d 660 (N.Y. App. Div. 1991), appeal denied, 587 N.E.2d 289 (1991). See also *Tanenbaum's Estate*, 248 N.Y.S.2d 749, 754 (N.Y. App. Div. 1964), aff'd 205 N.E.2d 866 (N.Y. 1965) ("In dealing with corporate property, an individual who acts both in the capacity of a director of the corporation and in the capacity of a fiduciary of an estate having a proprietary interest therein, is to be held fully

responsible for the business affairs of a corporation founded by the settlor, where the corporation's shares comprised the principal of the trust over which he was trustee. The trustee, while acting in his corporate role, caused the corporation to sell most of its marketable securities and loaned the proceeds to another corporation of which he was part owner, and that corporation ultimately failed, causing the loan to become worthless.[25] The court, rather than holding the trustee to the business judgment rule governing the actions of corporate officers as to shareholders, found that the trustee "acquired full legal authority to manage the affairs of [the corporation] by virtue of his trusteeships. This was sufficient for the application of trustee standards to his conduct of the affairs of the corporation."[26]

Likewise, the trustees in the instant action acquired the legal authority to manage the Family Entities held within the trusts by virtue of their trusteeships, as discussed above. It is also clear that, as discussed above, even where they do not hold majority interests, they still exercise control of the family entities held within the trusts. "Once a trust relationship is established between a beneficiary and a trustee

accountable as an estate representative").

[25] *In the Matter of the Estate of Schulman*, supra at 661-662.

[26] Id. at 662.

18

managing a corporation for a trust, the fiduciary standards of care apply to his conduct regarding the affairs of the corporation."[27] Further, where "trustees elect themselves officers and directors, they actually operate the business as representatives of the estate."[28] Based on this persuasive authority, and existing Georgia law, we find that the appellees in the instant case may be held to trustee-level fiduciary standards of care as to their actions related to the Family Entities, which they control, and which are held within the trusts at issue.[29] "[W]ere it not so, the clever manipulation of corporate structure could result in the validation of . . . myriad . . . transactions that otherwise would be proscribed."[30] Thus, the trial court erred in determining that fiduciary duties do not apply to actions taken at the entity level.

(b) *Breach of fiduciary duty and breach of trust for actions taken at the entity level.* In three enumerations of error, the Beneficiaries contend, inter alia, that the

---

[27] (Citation omitted.) *In re Fruehauf Trailer Corp. v. Street*, 431 B. R. 838, 850 (F) (U.S. Bankr. Ct. C.D. Calif.) (2010).

[28] (Citation omitted.) *In re Shehan's Will*, 141 N.Y.S.2d 439, 446 (N.Y. App. Div. 1955).

[29] *Saltzman v. Commr. of Internal Revenue*, 131 F.3d 87, 89 (I) (2d Cir.) (1997) ("A trustee cannot alter his legal position by changing his cloak") (citation and punctuation omitted).

[30] (Footnote omitted.) *Hanson*, supra at 712 (5) (c).

19

appellees breached their fiduciary duties and duties of trust in administering the trusts and in distributing income and principal; in establishing a code of conduct that conditions distributions on the Beneficiaries' behavior; in making non pro rata distributions; in converting liquid, marketable assets into illiquid, unmarketable investments, partnership interests, or debt; and in shifting management and control of trust assets away from the Beneficiaries and to themselves such that distributions and assets, in contravention of the trust indentures, are not "free of trust."

The Beneficiaries argue that these actions "effectively stripped [them] of hundreds of millions of trust assets that their grandfather put away for their benefit," and show self-dealing, bad faith, and a conflict of interest, in that Gary and Randall serve both as trustees of the trusts at issue and as managers of the family entities held within the trusts. The Beneficiaries thus contend that the trial court erred in denying their motion for partial summary judgment and in granting the appellees' motion for summary judgment. In order to prevail on their motion for partial summary judgment, the Beneficiaries were required to prove that the undisputed facts of this case established that the appellees breached their fiduciary duties and duties of trust.[31] To defeat the appellees' motion, they were required to show that material issues of fact

---

[31] *Wolf v. Middleton*, 305 Ga. App. 784, 785 (1) (700 SE2d 598) (2010).

remained for jury resolution on these issues such that they may be entitled to equitable relief.[32]

In an action for breach of fiduciary duty, establishing a claim "requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by that breach."[33] In Division (2) (a), we found that the appellees have trustee-level fiduciary duties for actions they took related to Family Entities held within the trusts. A trustee is a fiduciary and, as such, is held to the highest standard of the law, because a fiduciary is a "person who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, trust, confidence, and candor."[34] OCGA § 53-12-300 provides that a "trustee shall be accountable to the beneficiary for the trust property. A violation by the trustee of any duty that the trustee owes the

---

[32] Id.

[33] (Punctuation and footnote omitted.) *SunTrust Bank v. Merritt*, 272 Ga. App. 485, 489 (2) (612 SE2d 818) (2005).

[34] (Citations and punctuation omitted.) *Nalley v. Langdale*, __ Ga. App. __ (2), n. 19 (734 SE2d 908, 917) (2012) (physical precedent only).

beneficiary shall be a breach of trust."[35] OCGA § 53-12-302 (a) provides that a trustee "who commits a breach of trust shall be personally chargeable with any resulting damages."

(i) *The unilateral amendment of the RIF general partnership*. The Beneficiaries allege that the trial court erred in failing to find that the appellees breached their fiduciary duties in unilaterally altering the partnership agreement for RIF, a family entity held within the S-Trusts, and in not granting partial summary judgment to the Beneficiaries on this issue. We find that fact questions remain that are not subject to summary adjudication.

The RIF partnership agreement as drafted in 1988 named Gary and Randall, individually, as well as each Beneficiary's S-Trust, as partners in RIF. The S-Trusts all made initial, equal capital contributions and had equal ownership interests in the partnership; Gary and Randall made greater contributions and thus had greater ownership interests. By the terms of the agreement, each partner had the right to

---

[35] Although the Revised Georgia Trust Code became effective July 1, 2010, it applies to any trust regardless of the date such trust was created, with two exceptions: "to the extent it would impair vested rights" and "except as otherwise provided by law." OCGA § 53-12-1 (b). See also *McPherson v. McPherson*, 307 Ga. App. 548, 550 (1) (a) (705 SE2d 314) (2011). As no party contends that either exception applies in the instant case, we proceed under the Revised Trust Code as supplemented by the common law. See id. at 550-551 (1) (a).

manage the partnership, and the agreement could be amended only "with the consent of all Partners." The agreement further provided that "'Cash Flow' for any year . . . shall be distributed to the Partners at such times as the Partners shall reasonably decide, pro rata to each Partner's interest."

In 1993, two years after the Settlor's death, Gary and Randall amended the RIF partnership agreement to concentrate additional management power in themselves and to permit non pro rata distributions to themselves and other partners at their discretion. The amended RIF partnership agreement provided that the partnership "intends to make periodic distributions of cash to the Partners at such times, in such amounts, and among the Partners in such proportions as the Managing Partners [Gary and Randall] may determine in their sole and absolute discretion," and that the managing partners "shall have complete and exclusive authority to manage and conduct the Partnership's business and affairs. No other Partner shall participate . . . ." Gary and Randall signed both the original RIF agreement and the amendment individually, and Gary signed in his capacity as trustee for the Beneficiaries' S-Trusts at issue in this litigation. None of the Beneficiaries at issue signed either RIF agreement. The Beneficiaries allege that they neither "participated in this change to the RIF partnership agreement [n]or had any knowledge of it."

23

Further, on March 1, 2011, Gary and Randall executed a "Unanimous Consent of the Managing Partners of Rollins Investment Fund To Action Without a Meeting," at which they resolved to distribute $9 million to "certain partners in RIF." The Beneficiaries contend that neither they nor their S-Trusts received any part of this distributions; rather, it was distributed to Randall's children, who did not sue.

The Beneficiaries assert that they were harmed by not receiving these and other distributions, contending that they were entitled to pro rata distributions under the original RIF agreement. They also contend that Gary and Randall acted outside the scope of their authority in amending the RIF agreement, without informing the Beneficiaries, to permit non pro rata distributions.

Gary, as trustee of the Beneficiaries' S-Trusts, and Randall, as a co-manager with Gary of RIF, argue that the S-Trust Indenture gave them the right to amend the RIF agreement in that it gives the trustees the power to "become or remain a partner, general or limited, in regard to any" business or property in which the S-Trusts hold an interest, and to "join with other owners in adopting any form of management" for businesses in which the trust has an interest.

24

Gary and Randall counter that they acted in good faith and modified the RIF agreement, inter alia, to minimize capital gains taxes and to allow them to make distributions to the Beneficiaries' S-Trusts, but not their own S-Trusts. They argue that the S-Trust indenture authorizes them to treat RIF distributions as principal and that principal distributions are subject to the trustee's discretion. They also contend that since the modification, they have made a "significantly greater proportion of distributions from RIF to [the Beneficiaries] . . . or their S-Trusts[] than they have taken themselves," and proffer dollar figures in support of this statement. However, they do not offer any record citations that point us to relevant evidence supporting this statement.

Here, the significance of the amendment and its material impact on the Beneficiaries raises factual questions as to whether the appellees exercised the utmost good faith in altering the RIF agreement. As we found in Division (2) (a), above, Gary and Randall's fiduciary duties do not abate when they make decisions at the entity level. Further, even at the entity level, "[c]orporate officers and directors have a fiduciary relationship to the corporation and its shareholders and must act in good

25

faith."[36] Further, even given the breadth of discretion granted in a trust instrument, a trustee must exercise his powers in good faith,[37] and a court of equity may intervene if trustees have abused their authority or trust.[38] Trustees have a duty not to undertake "any act inconsistent with the interest of the beneficiary."[39] The appellees' actions in amending the RIF agreement, without notifying the Beneficiaries, to further concentrate control of RIF in Gary and Randall and remove control from the Beneficiaries' S-Trusts, and in altering the RIF agreement to sanction non pro rata distributions wholly at Gary and Randall's discretion, and then in sanctioning distributions that excluded the Beneficiaries, create material issues of fact as to whether the appellees breached their fiduciary duties.[40] Given the evidence before us,

---

[36] (Punctuation and footnote omitted.) *Aukerman v. Witmer*, 256 Ga. App. 211, 218 (4) (568 SE2d 123) (2002).

[37] OCGA § 53-12-260.

[38] See *Smith v. Hawks*, 182 Ga. App. 379, 383 (3) (355 SE2d 669) (1987).

[39] (Citation omitted.) *Ray v. Nat. Health Investors, Inc.*, 280 Ga. App. 44, 51 (5), n. 10 (633 SE2d 388) (2006).

[40] See *Bloodworth v. Bloodworth*, 260 Ga. App. 466, 471 (1) (579 SE2d 858) (2003) (material issues of fact existed for jury where executors sold family farm from estate without first informing beneficiaries who wished to bid on farm, and in contravention of agreement between executors' counsel and beneficiaries' counsel not to proceed immediately with sale).

it is unclear if in making non pro rata distributions from RIF, Gary and Randall managed the trust assets under their control to the best advantage of the Beneficiaries.[41] Our Supreme Court has held that a beneficiary need not show that the fiduciary actually succumbed to temptation; it is sufficient to show that the fiduciary allowed himself to be placed in a position where his personal interests might conflict with the interests of the beneficiaries.[42] Accordingly, we find that a jury must resolve the central question of whether the appellees breached their fiduciary duties. Similarly, a jury must decide whether in failing to disclose the RIF amendment to the Beneficiaries, the appellees

> committed constructive fraud or engaged in a conspiracy [under] OCGA
> § 23-2-53 [which provides] "suppression of a material fact which a party
> is under an obligation to communicate constitutes fraud. The obligation
> to communicate may arise from the confidential relations of the parties
> or from the particular circumstances of the case.[43]

(ii) *Code of conduct*. The Beneficiaries also contend that the trial court erred in finding no breach of fiduciary duty in a conduct-based distribution system Gary

---

[41] Id.

[42] *Powell v. Thorsen*, 253 Ga. 572, 574 (3) (322 SE2d 261) (1984).

[43] (Punctuation omitted.) *Bloodworth*, supra.

and Randall imposed on assets dispensed from the Family Entities held within the trusts. The Beneficiaries contend that the system, which was used as a basis for non pro rata distributions, was false and misleading and had no basis in any trust instrument.

For example, in effectuating the conduct-based distribution system, Gary and Randall, among other things, sent a letter to Beneficiaries identifying themselves as "trustees" of the family entity known as LOR, Inc. and informing them that the LOR, Inc. distribution policy was being changed to condition distributions on behavioral elements including "100% attendance, preparation and meaningful participation in quarterly LOR Shareholder Meetings," the Beneficiaries' personal conduct, and their engagement in "serious pursuits that are meaningful, respectable and worthwhile in the opinion of the Trustees." The letter further states, "[t]he distribution shall be calculated as a percentage of asset value," and that "[i]nvestment performance remains an important element of the methodology," but also states that the "distribution is not automatic or routine in nature" and is subject to modification "based on your commitment, participation and contribution to the family and to the enterprise." Gary and Randall sent other, similar memoranda regarding another family

28

entity, RFA, identifying themselves as "RFA Trustees" and conditioning distributions on the Beneficiaries' conduct as well as investment performance.

The Beneficiaries contend that they were misled into accepting these strictures, in that neither RFA nor LOR, Inc. are trusts, and so Gary and Randall are not trustees of these entities. There is evidence in the record, including Gary and Randall's own admissions, that RFA and LOR, Inc. are not trusts and that the brothers are not trustees. The Beneficiaries allege that they were injured because the alleged subterfuge was used to "cover up the fact" that Gary and Randall were distributing the Beneficiaries' own trust funds inequitably and in ways that were contrary to the trust instruments. They point to the following deposition testimony from Randall:

> Q: And even though you were taking money from the assets held in trust for my clients, you and Gary were imposing requirements on these distributions that did not have any basis in the trust instruments, correct?
>
> A: That's correct.

Gary and Randall argue that these uses of the word "trust" were merely a "shorthand" way of referring to the distribution program, and that the Beneficiaries understood this and were not misled, and there is some evidence in the record from which a jury could conclude that the Beneficiaries knew that these were not trusts.

29

Further, despite the discretion as to distributions granted to Gary and Randall under the terms of the S-Trust and RCT Trust indentures, a fact question exists as to whether Gary and Randall abused their discretion in making distributions in an arbitrary or oppressive fashion. The evidence shows that the Beneficiaries indeed received non pro rata distributions – or none at all, in some years – from their own S-Trusts. The record also contains evidence that on March 1, 2011, about six months after the Beneficiaries filed the instant action, through the "Unanimous Consent of the Managing Partners of Rollins Investment Fund to Action without a Meeting" memorandum mentioned in Division (2) (b) (i), Gary and Randall distributed $9 million to some RIF partners. None of that money went to the Beneficiaries, who presented evidence that this distribution and others were a "reward" for their cousins, i.e., the other beneficiaries of the trusts, who did not sue.

> [A]s the Revised Trust Code and the common law agree, . . . a court may interfere with the exercise of discretion by a trustee only if that discretion is infected with fraud or bad faith, misbehavior, or misconduct, *arbitrariness, abuse of authority or perversion of the trust, oppression of the beneficiary*, or want of ordinary skill or judgment.[44]

---

[44] (Citation and punctuation omitted; emphasis supplied.) *Reliance Trust Co. v. Candler*, 315 Ga. App. 495, 499-500 (2) (726 SE2d 636) (2012).

30

Trustees, even those with broad discretion, may not behave toward beneficiaries in an arbitrary fashion. For example, we have found that a trial court had the authority to intervene in the administration of a trust where the primary trust purpose was to provide for the beneficiary's welfare, but the trustees arbitrarily limited support payments because they disliked the beneficiary's wife and wanted to preserve the corpus for residual beneficiaries.[45]

As outlined above, the record contains evidence from which the jury could infer that Gary and Randall exceeded the scope of their discretion under the trust indentures in implementing the code of conduct and in making arbitrary distributions amounting to a breach of trust or fiduciary duty. The record likewise contains evidence from which a jury could infer that, even given their fiduciary duties at the entity level, Gary and Randall were acting within the broad authority granted them by the trusts in which the entities at issue are held.

Further, given Gary and Randall's representations that LOR, Inc. and RFA were "trusts" and that they were "trustees" of these family entities, "[u]nder the circumstances of this case, whether that representation was made negligently,

---

[45] *Citizens and Southern Nat. Bank v. Orkin*, 223 Ga. 385, 390-391 (1) (156 SE2d 86) (1967).

fraudulently, or in good faith remains for the jury to resolve."[46] As such, any determination of whether the Beneficiaries were harmed by these actions is also for the jury, and thus, the trial court's finding on the issue of harm is also in error.

(iii) *Replacement of marketable securities held within trusts with illiquid investments held in trust entities.* In their fourth enumeration of error, the Beneficiaries allege that the trial court erred in failing to rule that the "trustees breached their fiduciary duties by replacing marketable securities in the *trusts* with illiquid investments in *trust entities* that are saddled with debt and under the permanent control of the trustees."[47]

Given that in Division (1), we found that the trial court erred in not ordering an accounting of the very "trust entities" mentioned in this enumeration, absent the information such an accounting would reveal, any analysis or decision based on whether the trustees breached their fiduciary duties or duties of trust in their use of

---

[46] *Nalley*, supra at 917 (2).

[47] (Emphasis supplied.)

32

power as to the handling of assets and debt within those entities is premature. This enumeration is unripe for our review.[48]

For the foregoing reasons, we reverse the judgment of the trial court, and remand the case for proceedings not inconsistent with this opinion.

*Judgment reversed and case remanded. Miller, P. J., and Branch, J., concur.*

---

[48] See generally *Ga. Dept. of Transp. v. Douglas Asphalt Co.*, 295 Ga. App. 421, 425 (2) (671 SE2d 899) (2009).

33